UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )  <br> Plaintiff  ) <br> ) <br> v.  ) <br> ) <br> LARRY COCHRAN,  ) <br> Defendant  ) | No. 2:06 CR 114 |

## OPINION and ORDER

This matter is before the court to address several pre-trial motions filed by defendant Larry Cochran, who is representing himself. The motions, organized in the order the court will address them rather than the order in which they were filed, are: 1) "Motion to Dismiss Indictment for Outrageous Police Misconduct" (DE # 66); 2) "Motion for Discovery or Dismissal of Indictment" (DE # 37/38); 3) "Motion to Suppress Evidence and Memorandum in Support Thereof" (DE # 69); 4) "Defendant's Motion for Evidentiary Hearing" (DE # 51); 5) "Motion in Limine" (DE # 34); 6) "Defendant's Motion in Limine to Prohibit Prejudicial Terms and Statements" (DE # 44); and 7) "Defendant's Motion in Limine to Prohibit the Presentation of Argument or Evidence Regarding Out-Of-Court Statements" (DE # 50).

A good background for consideration of Cochran's motions can be provided by summarizing the testimony the court heard on a motion to suppress evidence during a hearing spanning part of two days, December 14 and 20, 2006. At that time Cochran was represented by a court-appointed attorney. Briefly, on April 17, 2006, an unknown Hammond, Indiana citizen stopped Hammond Police Officer Nicole Duncanson, who was out on patrol, and told her that a black male named "Larry" who resided at 833

Gostlin Street, and who drove a maroon Ford Taurus, was selling crack cocaine by delivery to various businesses in Hammond. Officer Duncanson shared this accusation with fellow officers, either later that day, or the next at a briefing before their shift started (there was some disagreement in the testimony as to when she shared the information).

A few days later, Hammond Police Officer Joseph Martinez observed an individual he thought might be "Larry" in a maroon Ford Taurus at 833 Gostlin Street. As this individual did, as will be seen shortly, turn out to be defendant Larry Cochran, the court will simply refer to him as Cochran from this point forward. Martinez saw Cochran entering and exiting the Taurus and also a silver Mercury Cougar parked nearby. Officer Martinez resumed his patrol, and later that day—or the next day, Officer Martinez' recollection differs from Officer Duncanson's and her notes on this issue—he saw a person he thought was the same individual driving the same Cougar on Columbia Street in Hammond. He contacted Officer Duncanson by Nextel (apparently a cellular phone used as a walkie-talkie device by the Hammond Police). Martinez told Duncanson his location and that he was following an individual who he thought was the person she had received the tip about.

Martinez followed Cochran to a used car dealership on Columbia Street. Cochran parked at the dealership, and Officer Martinez parked his marked patrol car across the street. He saw Cochran enter a building, then come out accompanied by a white male. Cochran then walked to Officer Martinez's car and asked Martinez if there was a problem. Martinez replied that there was not.

2

Cochran then went back to the used car lot, and he and the white male went to a vehicle that was for sale. Cochran sat down in the driver's seat, then got out. Then the white male got in the driver's seat while Cochran glanced around in what appeared to be a "nervous" way to Officer Martinez. Officer Martinez again contacted Officer Duncanson and told her that he thought he may have witnessed a drug transaction. According to Martinez, Officer Duncanson then arrived on the scene.[1] Duncanson parked her patrol car behind a liquor store where she believed she could see the used car lot, but that Cochran and the other individual would not notice her. She called Officer Martinez and told him to leave.

Cochran then got back in the Cougar and drove away southbound on Columbia Street. Officer Duncanson followed him and within a few blocks pulled him over after she observed him make an improper lane change and for improperly displaying his registration tags. After he pulled his car to the curb, as Duncanson approached him to obtain his license and registration, she observed him shifting from side to side in the vehicle. She requested back up, and Officer Martinez arrived in only a minute or so, followed by Officer Carmen Ramirez only a minute or so later. Officer Duncanson then called Corporal Aubrey Thomas, a canine-handling officer, because she wanted the dog to sniff the car for drugs. Corporal Thomas arrived in a few minutes. In total, only three or four minutes had elapsed from the initial traffic stop.

---

[1] Again, the testimony at the suppression hearing differed on this issue. According to Officer Duncanson, she arrived earlier and she herself also observed the men entering and exiting the vehicle.

Corporal Thomas told Officer Duncanson that he didn't want Cochran in the car while the dog searched it. Officer Duncanson asked Officer Ramirez to get Cochran out of the vehicle. Officer Ramirez told Cochran to exit the vehicle. Traffic was passing close by the side of the stopped vehicle—Columbia is a busy street—and she escorted Cochran to the rear of the vehicle for the safety of them both. She noticed that he was wearing very "baggy" clothing and started to ask him whether he might be carrying any weapons she should know about.

As Cochran stepped around the rear corner of the vehicle Officer Duncanson saw a small plastic packet containing a white substance fall from his pants leg, which she immediately thought might contain narcotics, and shouted "Carmen." Ramirez picked up the bag, then placed Cochran on the trunk of the vehicle, and as she touched his pants leg, more bags fell to the ground. Duncanson proceeded to do a pat-down of Cochran while Ramirez retrieved all of the bags from the ground.[2] Duncanson and Ramirez thought that the bags looked like crack cocaine, and they placed Cochran in handcuffs. Cochran began spontaneously stating that he was not a dealer, but only transported drugs and that he could help them "get the other guys." Cochran was placed in the back of Duncanson's patrol car for transport.

Cochran's vehicle was then searched at the scene, and Duncanson found more bags containing what appeared to be crack in the console between the two front seats. In the trunk Ramirez found a digital balance-beam scale and an eyeglasses case

---

[2] There was some disagreement in the testimony as to whether Duncanson, Ramirez, Martinez or some combination of all three did the pat-down.

containing more white rock-like substance. A field test of the white substances back at the Hammond Police station was positive for cocaine. As Duncanson was transporting Cochran to the station, he again spontaneously told her that he transported drugs for others, but did not sell them. She told him to be quiet. She did this because the Hammond Police prefer any incriminating statements to be obtained in interviews conducted by narcotics detectives.

Based on the above testimony, the court denied Cochran's motion to suppress the physical evidence and his statements. As to the physical evidence, it all resulted from a valid traffic stop which resulted in a bag of suspected drugs falling into plain view, a lawful pat-down of Cochran for officer safety and incident to his lawful arrest, and lawful search of the car based on a reasonable suspicion that it might contain further contraband and evidence of crime. As to Cochran's statements, they were voluntary spontaneous utterances that did not result from any police interrogation.

**1) Motion to Dismiss Indictment for Outrageous Police Misconduct (DE # 66)**

Citing *United States v. Russell*, 411 U.S. 423, 431-32, 93 S. Ct. 1637, 36 L. Ed.2d 366 (1973), in which the Court stated in dicta "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," Cochran moves for dismissal of the indictment in the present case and for an evidentiary hearing on his motion.

It is not entirely clear that outrageous governmental misconduct supplies any basis for dismissing an indictment: *compare United States v. Boyd*, 55 F.3d 239, 241 (7th

5

Cir. 1995) (discussing prosecutorial misconduct and stating that doctrine of outrageous governmental misconduct "does not exist in this circuit") *with United States v. Childs*, 447 F.3d 541, 545 (7th Cir. 2006) (observing that Court in *Russell* "left open the possibility" of dismissing an indictment for governmental misconduct, but that Seventh Circuit has never seen the need to take that "extreme step"). However, what is clear is that "[a]s in all requests for dismissal of the indictment or suppression of the evidence, the defendant must first allege facts demonstrating that a hearing on the suppression issue is warranted and then at the hearing must produce evidence that he or she is entitled to the relief sought." *United States v. Utecht*, 238 F.3d 882, 887 (7th Cir. 2001).

Cochran's motion is devoid of any allegation suggesting what facts he has suggesting that "outrageous police misconduct" has occurred or why the court should grant him an evidentiary hearing. The complete substance of his motion consists of a few sentences amounting to nothing more than unsupported accusations: he "intends on contesting several assertions contained in the Hammond Police Department reports, supporting documents, and the testimony of officers" to show that "the police fabricated the entire offense," and that at a hearing he "will show that members of the Hammond Police department manufactured all the evidence in this case, creating and committing a criminal offense, all in an effort to secure a conviction against the defendant." Motion, DE # 66, at 1; 7-8.

It should be noted that, although Cochran was represented by counsel at the suppression hearing already conducted in this case, it was readily apparent that he was actively participating with his counsel at that hearing—in some instances it appeared

6

his counsel was following his direction to ask specific questions—and there is no reason that he could not have testified at that time in support of whatever facts he believes show that police misconduct occurred. Moreover, Cochran's attorney meticulously cross-examined the officers who testified at the hearing resulting in the inconsistencies mentioned above (and others) in their testimony, but those minor inconsistencies provided no basis to suppress the evidence. At present, nothing supports Cochran's assertion, made in his Motion to Suppress Evidence (DE # 69), that his attorney's performance at the hearing was ineffective.

In short, all Cochran has done now is show that he wants a second opportunity to plow the same ground. He has proffered no facts hinting that any police misconduct occurred which would justify holding an evidentiary hearing for him to make further inquiry. His motion to dismiss the indictment because of outrageous police misconduct, and for the court to hold a hearing on that motion, is **DENIED**.

**2) Motion for Discovery or Dismissal of Indictment (DE # 37/38)**

In this motion Cochran requests, pursuant to Fed. R. Crim P. 16(a)(3) and (c), an order directing "the government to provide the exact information and criteria relied upon for the decision to prosecute," so that he might show that "proper procedures for indictment were not adhered to" and that the indictment was obtained by the presentation of false information and perjured testimony to the grand jury that returned the indictment.

Magistrate Judge Cherry has ensured that Cochran has been provided (or will, prior to trial be provided) all discovery and evidence in the government's possession to

7

which he is entitled by the Constitution, the Jencks Act (18 U.S.C. § 3500(b)), and the FEDERAL RULES OF CRIMINAL PROCEDURE. Cochran has not indicated that he is dissatisfied with the government's production, and he has proffered no facts gleaned from discovery that would augur in favor of dismissal of the indictment. Accordingly, his motion for discovery or dismissal of the indictment (DE # 37/38) is **DENIED**.

**3) Motion to Suppress Evidence and Memorandum in Support Thereof (DE # 69)**
**4) Defendant's Motion for Evidentiary Hearing (DE # 51)**

Before filing his motion to suppress evidence, Cochran moved for the court to hold an evidentiary hearing at which he would seek to suppress all of the evidence seized at the time of his arrest and the statements he (allegedly) made (DE # 51). He later filed a motion to suppress and memorandum in support seeking to suppress that same evidence (DE # 69). In that motion he reiterated his request for a hearing, justifying his request, as he did in his motion to dismiss the indictment because of outrageous police misconduct (DE # 66), by stating that he "intends on contesting several factual assertions contained in the Hammond Police Department reports and supporting documents." Motion, DE # 69, at 1. Also similar to his motion to dismiss the indictment, his motion to suppress contains a lengthy discussion of the law applicable to traffic stops, search and seizure, but nothing in the way of proffered facts to justify holding an evidentiary hearing or suggesting there is a reason to suppress the evidence.

Cutting straight to the motion's essence, Cochran's argument is that:

> [He] will show, at an evidentiary hearing, the officers performed an illegal intrusive search of the defendant and his vehicle, and the items seized an allegedly seized are inadmissible and should be suppressed. The removal of the defendant from his vehicle and the initial patdown of defendant is

8

> simply not supported, in the reports, by a reasonable belief that he was armed and presently dangerous, a belief which the Seventh Circuit has invariably held must form the predicate to a patdown for weapons.

Motion, DE # 69, at 5. Cochran's further points are that once he was placed under arrest the police could search the passenger compartment of his vehicle, but not the trunk, for which he cites *United States v. Thornton*, 197 F.3d 241 (7th Cir. 1999) in support; and, without elaboration, that at a hearing he will show that the statements he allegedly made are either "manufactured or have been altered." Motion, DE # 69, at 6.

Cochran has proffered nothing to suggest that Officer Duncanson's initial stop of his vehicle for traffic infractions was illegal: that is, the court has already heard, and found credible, her testimony that she pulled Cochran over because he made an unsafe lane change and because there were no license plates on the vehicle, only a temporary paper registration which was not plainly visible. Cochran has alleged nothing new placing any doubt on her credibility and her reasons for initiating the traffic stop.

As Cochran himself admits, if the traffic stop was valid, the police could without need of further reason order him to exit his vehicle. *New York v. Class*, 475 U.S. 106, 115-16, 106 S. Ct. 960, 89 L. Ed.2d 81 (1986) ("officers may, consistent with the Fourth Amendment, exercise their discretion to require a driver who commits a traffic violation to exit the vehicle even though they lacked any particularized reason for believing the driver possesses a weapon"); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed.2d 331 (1977). Cochran argues, however, that at the suppression hearing already held the officers testified that the reason that they asked him to exit the vehicle was for

9

their own safety, and "[t]hat being the case the officers, pursuant to *United States v. Rivers*, 121 F,3d 1043, 1045 (7th Cir. 1997), must be able to point to specific and articulable facts that the individual is armed and presents a risk of harm to officers and to others." Motion, DE # 69, at 6.

The court fails to see how Cochran draws this legal principle from *Rivers*. The discussion in *Rivers* was focused on the circumstances when the police may make an investigatory stop of an individual consistent with *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968), in particular, to pat down a *passenger* in a stopped automobile. Here, Cochran was the driver of an automobile which was lawfully stopped for an observed traffic violation. Moreover, the Supreme Court has explained that the rationale for allowing officers automatically to order a driver to exit from his automobile is largely to ensure officer safety. *Mimms*, 434 U.S. at 110, 98 S. Ct. at 333; *Maryland v. Wilson*, 519 U.S. 408, 412, 117 S. Ct. 882, 885, 137 L. Ed.2d 41 (1997). Thus, the testimony of the officers in the present case did nothing more than state the obvious and permissible reason for ordering him to exit his vehicle, and does nothing to place in doubt their lawful right to do so.

Cochran's next problem with the circumstances of the stop and subsequent seizure of evidence is his assertion that the officers could not pat him down without a reasonable belief that he was armed and presently dangerous, which he states is "a belief which the Seventh Circuit has invariably held must form the predicate to a patdown for weapons." Motion, DE # 69, at 5. This statement is actually a quotation

10

from *Ybarra v. Illinois*, 444 U.S. 85, 92, 100 S. Ct. 338, 343, 62 L. Ed. 2d 238 (1979), which Cochran also cites in support of his argument.

While Cochran's understanding of the law is sound on this point, he ignores some important facts. First, Officer Duncanson testified that the first bag of what appeared to be crack cocaine fell out of Cochran's pants leg and into plain view on the street *before* any pat-down search of his person was conducted. His carrying drugs on his person was alone more than enough reason to suspect that he might be armed and dangerous. *See United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002) ( "It is 'beyond dispute that drug traffickers are often armed and dangerous'") (quoting *United States v. Ocampo*, 890 F.2d 1363, 1369 (7th Cir. 1989)).

Second, the fear that Cochran might be armed was even more reasonable, given that Duncanson had only a few minutes earlier seen him engage in what she thought was a narcotics transaction, and her observation of him shifting from side-to-side in his vehicle after she stopped him. Even if a bag of apparent crack cocaine had not fallen out of his pants, these reasons alone might have provided enough suspicion to justify frisking Cochran, although the bag falling from his pants obviates the need to arrive at that decision. The bottom line is this: Cochran has given the court no reason to think that there is any problem with the pat-down search of his person, conducted after a bag of what appeared to be crack fell from his pants leg.

Cochran's next argument, citing *United States v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed.2d 768 (1981), and *United States v. Thornton*, 197 F.3d 241, 249 (7th Cir.

11

1999), is that after he was placed under arrest, the police could lawfully search the passenger compartment of his car, but not the trunk. Actually, *Thornton* states the opposite: "Automobiles may be searched without a warrant if there is probable cause that the car contains evidence the officers are entitled to seize." 197 F.3d at 249.

As is explained in *United States v. Pittman*, 411 F.3d 813, 817 (7th Cir. 2005), the *Belton* rule justifies the search of an automobile passenger compartment incident to an arrest to prevent the occupant from reaching for a weapon or destroying evidence, but when there is probable cause to believe that a search of the automobile will uncover evidence of contraband, the entire automobile is subject to search, just as is stated in *Thornton*. Thus, once the police discovered the bags of suspected crack cocaine that fell from Cochran's pants, they had probable cause to search the entire automobile. Cochran has identified no grounds on which items seized from the trunk should be suppressed.

Last, Cochran states that at a hearing he will show that the statements he allegedly made spontaneously while in custody are either "manufactured or have been altered." Motion, DE # 69, at 6. As previously stated in regard to Cochran's motion to dismiss the indictment, before he is entitled to a hearing Cochran must identify disputed issues of fact that justify holding the hearing. *Utecht*, 238 F.3d at 887. Cochran's statement that he "will" show that the statements were manufactured is not sufficient. This is also true with respect to the need for a hearing concerning Cochran's arguments concerning the physical evidence, as to which Cochran seeks a hearing so that he can "contest" the Hammond police officers' version of the events. Without some proffer

establishing that facts are in dispute, a hearing is unnecessary. *Id.*; *United States v. Rodriguez*, 69 F.3d 136, 141 (7th Cir. 1995) (defendant has burden of establishing necessity of hearing by presenting "definite, specific, detailed, and nonconjectural facts" to show there is a disputed issue of material fact).

For the foregoing reasons, Cochran's "Motion to Suppress Evidence and Memorandum in Support Thereof" (DE # 69) and Motion for Evidentiary Hearing (DE # 51) are both **DENIED**.

### 5) Motion in Limine (DE # 34)

Although styled as a motion in limine, this is another motion seeking to suppress all of the seized narcotics evidence and the spontaneous statements Cochran made after his arrest, the only difference being that it is based primarily on Cochran's contention that the "character" of the evidence has "come into question, due to the unreliability and untrustworthiness of the evidence." Motion, DE # 34, at 1. As with his motion to suppress and to dismiss the indictment, Cochran's argument amounts to a conclusion:

> The defendant, at an evidentiary hearing, will demonstrate that the evidence, for which exclusion is being sought, was planted, fabricated, tampered with, and altered. That this evidence is untrustworthy and unreliable. Also, that [it] is a product of a violation in the chain of custody.

Motion, DE # 34, at 6-7.

As before, without any articulation or proffer of facts to support this conclusion, Cochran is not entitled to a hearing. *Utecht*, 238 F.3d at 887; *Rodriguez*, 69 F.3d at 141. The only thing the court will add is that the government does have the burden, at trial, of establishing a proper foundation for the admission of its evidence, and should there

13

be any problems with the chain of custody, the evidence would not be admissible. At the present time, however, Cochran's Motion in Limine (De # 34) and request for a hearing thereon is **DENIED**.

**6) Motion in Limine to Prohibit Prejudicial Terms and Statements (DE # 44)**

By this motion Cochran seeks to bar any use of the terms "drug dealer," "narcotics trafficking," "trafficking organization" and/or "any term concerning high level and state-wide drug dealing and trafficking of narcotics." Motion, DE # 44, at 1. He argues that such terms are overly prejudicial and cause an inference of guilt based on facts not in evidence.

The government's response is that it intends to call an expert witness to testify concerning the practices, methods and structure of narcotics trafficking organizations, particularly with respect to crack cocaine in northwest Indiana; the tools of the trade used by drug dealers; and the quantity, purity dosage level, methods of packaging, etc. of narcotics for distribution at street level. The government asserts it will not attempt to elicit testimony in an attempt to portray Cochran as himself being a high-level drug dealer. Cochran has filed a reply strenuously objecting that testimony on such subjects has no relevance in the present case, and will serve only to cause him unfair prejudice.

The court disagrees. Cochran is charged with a specific intent crime, that is, the government must prove that he possessed the cocaine seized from him with the intent to distribute it, not consume it himself. The government's proposed evidence is relevant to that issue. In addition, it is relevant to help the jury understand Cochran's alleged statements to the effect that he was not a drug dealer, but merely a drug courier. At the

same time, the court understands the point Cochran is making, and the government is cautioned that this is not a case to "overdo it." The government should refrain from using inflammatory terms and rhetoric where they are not necessary. However, because the government's proposed evidence is relevant and requires some use of the terms to which Cochran objects, his Motion in Limine to Prohibit Prejudicial Terms and Statements (DE # 44) is **DENIED**.

**7) Motion in Limine to Prohibit the Presentation of Argument or Evidence Regarding Out-Of-Court Statements (DE # 50)**

By this motion, Cochran seeks to prohibit any reference to the "tip" the unidentified Hammond citizen gave to Officer Duncanson concerning Cochran. The government's response is that it agrees those statements are inadmissible hearsay, and that it will not attempt to use them at trial. Accordingly, Cochran's Motion in Limine to Prohibit the Presentation of Argument or Evidence Regarding Out-Of-Court Statements (DE # 50) is **GRANTED**. The government is instructed to make no inquiry concerning or reference to the statements at trial, and to caution and instruct its witnesses to abide by this order.

For the foregoing reasons, defendant Cochran's:

1) "Motion to Dismiss Indictment for Outrageous Police Misconduct" (DE # 66) is **DENIED**;

2) "Motion for Discovery or Dismissal of Indictment" (DE # 37/38) is **DENIED**;

3) "Motion to Suppress Evidence and Memorandum in Support Thereof" (DE # 69) is **DENIED**;

4) "Defendant's Motion for Evidentiary Hearing" (DE # 51) is **DENIED**;

5) "Motion in Limine" (DE # 34) is **DENIED**;

6) "Defendant's Motion in Limine to Prohibit Prejudicial Terms and Statements" (DE # 44) is **DENIED**; and

7) "Defendant's Motion in Limine to Prohibit the Presentation of Argument or Evidence Regarding Out-Of-Court Statements" (DE # 50) is **GRANTED**.

                                **SO ORDERED.**

**Enter:** April 10, 2007

                              s/James T. Moody
                              JUDGE JAMES T. MOODY
                              UNITED STATES DISTRICT COURT