# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 2:06 CR 114** |
| | ) | **(No. 2:09 CV 275)** |
| **LARRY COCHRAN,** | ) | |
| **Defendant** | ) | |

## OPINION AND ORDER

On September 28, 2009, the Clerk of the Court received a motion pursuant to 28 U.S.C. § 2255 from Larry Cochran (DE # 346), requesting that his conviction be vacated. A § 2255 motion allows a person in federal custody to attack his or her sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. RULE 4 of the RULES GOVERNING § 2255 PROCEEDINGS requires the court to promptly examine the motion. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." RULE 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.

On November 15, 2007, a jury found Cochran guilty of one charge of possessing, with intent to distribute, five grams or more of a mixture or substance containing cocaine base—commonly called "crack" cocaine—in violation of 21 U.S.C. § 841(a)(1). Cochran took a direct appeal, and his conviction and sentence were affirmed. *United States v. Cochran*, 309 Fed. App'x 2 (7th Cir. 2009). His § 2255 motion has been timely

filed, as his petition for *certiorari* was denied earlier this year on April 20, 2009. *Cochran*

*v. United States*, – U.S. –, 129 S. Ct. 2027, 173 L. Ed. 2d 1115 (2009).

A brief discussion[1] of the issues raised in Cochran's motion shows why it is

meritless and does not entitle him to relief. The court addresses the issues using

Cochran's organizational scheme, in which he itemizes five "Grounds," each of which

(except Ground V) has multiple subparts explained in its own "Attachment for Ground

[x]."[2]

**Ground I**

Cochran has captioned his first issue as follows:

The Petitioner was Indicted, Arrested, Detained, Tried and Convicted
with, for and by, a Fatally Defective Indictment which Failed to State the
Offense, and Failed to Properly Inform the Petitioner of the Nature, Cause,
Elements and Facts of the Offense.

---

[1] As briefly as is possible. Cochran's memorandum (comprised of four "Attachments"
with a 2-page introduction) is 90 pages in length. With supporting exhibits, there are nearly 300
pages in total.

[2] Nearly every issue Cochran brings up could have been raised on direct appeal, and so
would be waived absent good cause for failing to do so, and prejudice suffered as a result (or
actual innocence). *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456
U.S. 152 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 91, (1977) (habeas corpus under § 2254,
extended by *Frady* to § 2255). As to each, Cochran argues that the cause for failing to raise it on
appeal is that his counsel was ineffective, either for not preserving the issue for appeal by
objecting at trial, or by not appealing the issue even if it was preserved (trial and appellate
counsel were the same). Because *Strickland* imposes its own prejudice component for ineffective
assistance claims, and the difference, if any, between waiver-prejudice and *Strickland* prejudice
is unknown, *Ouska v. Cahill-Masching*, 246 F.3d 1036, 1050 n. 13 (7th Cir. 2001), analysis of
virtually every § 2255 motion devolves into consideration of the merits. Thus, in the interest of
efficiency, the court proceeds directly to its explanation why Cochran's claims are meritless. *Cf.
Buggs v. United States*, 153 F.3d 439, 444 (7th Cir. 1998).

Attachment for Ground I (DE # 346-3) p. 1.[3] The heart of this issue is Cochran's argument that the indictment was defective because it charged him with possessing, with intent to distribute, a "mixture or substance" containing cocaine base, using a portion of the statutory language, but deviated from that language by failing to identify exactly what constituted the "mixture or substance described in clause (ii) which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii). As Cochran explains, he has raised this issue throughout the case, including in a motion he filed pro se, shortly before the trial commenced, seeking to dismiss the indictment. Attachment for Ground I (DE # 346-3), pp. 3-6. For the reasons given in the court's order of January 23, 2008 (DE # 279), which the court now incorporates herein by reference and which denied Cochran's motion to dismiss the indictment, Cochran's contention that the indictment was defective is meritless.

Cochran also complains that he did not learn of the court's order denying his motion to dismis the indictment until it was to late for him to appeal it himself, because the court never gave him notice that the order was entered. There are a number of reasons why this does not matter, and among them, briefly, are these. First, at the time the order was entered, Cochran was represented by appointed counsel, and counsel did receive notice of the order. Second, Cochran suffers no prejudice from being deprived of an opportunity to appeal a meritless issue. Third, even if the court's clerk had sent a

---

[3] Except for the transcripts of trial and sentencing, all references in this order to pagination are to the page numbers assigned by the CM/ECF system to the .pdf images of the documents. For the transcripts, the court uses the actual page numbers found in the originals.

copy of the order to Cochran himself, Cochran might not have received it. The record shows occasions on which Cochran refused to accept mail from the court (DE ## 208, 235), and even one instance in which he refused to accept a copy of a written ruling handed to him in open court. (DE # 270).

**Ground II**

Cochran's second ground is that his due-process right to a fair trial and his rights under the fifth, sixth and fourteenth amendments were violated by knowing and intentional acts of prosecutorial misconduct. Specifically, Cochran complains that the prosecutor: 1) intentionally obtained from the grand jury, and proceeded to trial on, an indictment which he knew to be fatally defective because it omitted essential elements; 2) in violation of a pretrial order in limine and of Cochran's rights under the confrontation clause, made repeated references to a citizen's tip to the police that Cochran was a drug dealer; 3) made repeated references to Cochran's criminal history, parole status, and (alleged) gang affiliation in violation of his due process right to a fair trial under the fifth and fourteenth amendments; and 4) commented, both directly and indirectly, on Cochran's absence from trial and his failure to testify in his own defense, violating his due process right to a fair trial.

Cochran's assertion that the prosecutor knowingly proceeded using a "fatally defective" indictment is the same argument made in Ground I, but wrapped in a charge of prosecutorial misconduct. As stated above, the court explained in its order of January 23, 2008 (DE # 279), denying Cochran's pretrial motion to dismiss the

indictment, all of the reasons why the indictment was not defective. The issue will not be given further consideration here.

As to Cochran's remaining charges of prosecutorial misconduct, the issue, as Cochran acknowledges in his well-written "Attachment for Ground II" (DE # 346-4), is analyzed using a two-step inquiry. The first question is whether the prosecutor's conduct was, in fact, improper: if it was not, the analysis ends. *United States v. Whitaker*, 127 F.3d 595, 606 (7th Cir. 1997). If the conduct was improper, then the question is whether, when considered in light of the record as a whole, the defendant was deprived of a fair trial, that is, whether the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

As to the comments listed above as items 2 and 3, that is, references to the tip that Cochran was a drug dealer and to his criminal history, parole status, and (alleged) gang affiliation, it is clear that the prosecutor's comments were not improper, so there is no need to proceed further. The reason that the comments were not improper is that all of the comments, but two,[4] were made after Cochran's defense counsel put into evidence, as defense exhibit L,[5] a police report which contained all of the information

---

[4] The first remark, a reference to the tip made during opening statement, was objected to by defense counsel, but the objection was overruled, for reasons explained *infra* p. 24, n. 19. The second comment, a reference to the substance of the tip, likely did violate a pretrial order in limine. However, as is explained herein, Cochran ultimately suffered no prejudice.

[5] Cochran has attached a copy of defense exhibit L to his motion as exhibit W, found at DE # 346-13, pp. 26-28.

which Cochran argues was prejudicial. The prosecutor's reference to evidence introduced by Cochran is not improper.[6]

Cochran acknowledges that his counsel put the report containing this information into evidence during cross examination of a government witness, Attachment for Ground II" (DE # 346-4), p. 11, but argues that this didn't "open the door" to the prosecutor's comments because the defense used the report for a completely different purpose, and more importantly, even if the defense opened the door or invited the prosecutor's remarks, that doesn't make improper comments proper. *United States v. Dominguez*, 835 F.2d 694, 702 (7th Cir. 1987). Thus, if the comments deprived him of a fair trial, his conviction should be vacated.

This argument is misplaced. Essentially, "opening the door" is a phrase used in cases to describe the situation where otherwise inadmissible evidence or comment is allowed—that is to say, some additional comment or fact—only because the opposing party has "opened the door" to a new subject. *See United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992); *United States v. Teague*, 445 F.2d 114, 118 (7th Cir. 1971) (defendant cannot complain about testimony which would not have been presented if subject had not been raised by defendant). The "invited response" doctrine is essentially the same, and refers to fighting fire with fire: "the defense counsel argues improperly, provoking

---

[6] Cochran's criminal history, parole status and alleged gang affiliation were mentioned during redirect immediately after the exhibit came into evidence, but were not mentioned again, and that the portion of the exhibit containing this information was redacted, on defense motion, before the exhibit went to the jury room during deliberations. Tr. Vol. II, p. 6.

the prosecutor to respond in kind." *United States v. Young*, 470 U.S. 1, 11 (1985). The

present situation is the converse, because rather than introducing, or referring to,

evidence that was inadmissible, the prosecutor instead referred to what had already

been admitted, which defendant propounded as Exhibit L, the police report. The

difference between this and an "invited response" or comment as to which the door has

been opened is illustrated further by Cochran's argument concerning the prosecutor's

comment on his failure to testify, the subject the court now takes up.

The last allegedly improper conduct by the prosecutor Cochran raises is

commentary concerning Cochran's absence from trial and his failure to testify in his

own defense. The first of these two issues, the prosecutor's comment during his

opening statement that Cochran, "by his own choice," was not present in the

courtroom, was raised and addressed during Cochran's direct appeal. The Court of

Appeals held that the prosecutor's remark was not improper, and, even assuming it

was, it caused no prejudice because of the overwhelming weight of the evidence against

Cochran. *United States v. Cochran*, 309 Fed. App'x 2, 2-3 (7th Cir. 2009). A motion under

§ 2255 is not a "recapitulation" of the direct appeal, and so absent a showing of changed

circumstances of law or fact, issues decided on appeal will not be revisited. *McLeese v.

United States*, 75 F.3d 1174, 1177 (7th Cir. 1996); *Norris v. United States*, 687 F.2d 899, 900

(7th Cir. 1982). Cochran does not argue that there are changed circumstances, giving the court no reason to consider the matter further.[7]

Last, Cochran points to statements[8] the prosecutor made during his rebuttal closing argument which Cochran believes were improper indirect comments on his invocation of his fifth amendment right not to testify. The test for whether such comments were improper is well-settled.

> The law is most clear that any *indirect* commentary on the defendant's failure to testify, including references to "uncontradicted" or "uncontested" testimony, in order to be improper, must (1) consist of language and words that are "*manifestly intended*" to be a comment on the defendant's decision not to take the stand, when analyzed in the context in which they are used, or (2) be of such a character that the jury would "*naturally and necessarily* take it to be a comment on the defendant's silence."

*United States v. Harris*, 271 F.3d 690, 701 (7th Cir. 2001) (*quoting, with emphasis, United States v. Lyon*, 397 F.2d 505, 509 (7th Cir. 1968)).

The portion of the prosecutor's rebuttal which Cochran casts as improper came immediately after the prosecutor acknowledged that because of "sloppy" police work, there were discrepancies in the evidence, such as differing reports as to the amount of

---

[7] Cochran does ask the court to consider the remark in assessing the cumulative impact of the prosecutor's conduct. Giving Cochran's argument its most liberal construction, considering the comment as part of the whole could be considered a changed circumstance of fact, and the court does factor the comment into its *Darden* analysis of the prosecutor's comment, discussed *infra* at pp. 10-11.

[8] Cochran argues that two portions of closing argument were improper, but one of the portions he cites is actually the prosecutor's redirect examination of a witness. Moreover, defense counsel made an objection to the questions asked, which was overruled because based on an exhibit defense counsel had just placed in evidence, *infra* p. 24, n. 20.

crack cocaine seized from Cochran and the time frame during which the relevant events

occurred. The prosecutor then stated:

> Does that change at all the defendant's full confession? Make no mistake
> about it, ladies and gentlemen, the defense has no burden whatsoever to
> ask any particular questions or to disprove anything. Nevertheless, what
> you have to reach your decision on is the testimony, the physical evidence
> and the testimony you heard from that stand. And there's been nothing
> whatsoever to challenge or controvert the fact that the defendant said
> when asked where the cocaine come [sic] from, varied places, car lot that
> he was seen in on Columbia, the house on Morris Street, 800 block. They
> later execute a search warrant on that house and they get drugs out of it. I
> picked half of it from the car lot, other half from the house on Morris.
> Does anything in that [police] paperwork, does anything on the scale
> issue, the timing issue, controvert that? Does anything change that full
> confession? Absolutely not. Is there anything in the paperwork that
> Mr. Stewart keeps talking about that changes the fact that the defendant
> said I don't know exactly how much coke I had on me today? I didn't
> weigh it. Is there anything in what he refers to as horrendous police work
> that changes the defendant's statement, I was taking it to the Dollar Bill on
> Columbia to see a guy named Dan. Here is what he looks like. I get five to
> $10,000 to deliver. I do it twice a week. Do it to a variety of people. Does
> anything change that ladies and gentlemen? Have you heard anything in
> this trial that controverts that? Has the defense attorney done anything
> that chips away at the fact that the defendant fully confessed to the trial
> that we're here for today? Confessed to the crimes he's charged with? I
> submit absolutely not.

Tr. Vol. II pp. 37-38. Cochran's argument that these comments were improper is:

> The Prosecutor's comments, in closing arguments, that the Petitioner's
> alleged confession was "uncontroverted," was an indirect comment on the
> Petitioner's failure to testify. This was not only "unfair" and "improper" it
> is completely forbidden, because no one but the defendant could have
> possibly contradicted or controverted this evidence.

Attachment for Ground II (DE # 346-4) pp. 12-13.

The court disagrees with Cochran's conclusion that this portion of the prosecutor's closing was intended to be a comment on his failure to testify, or that the jury would have understood it to mean that. In context, it is clear that the prosecutor was arguing that all of the discrepancies defense counsel pointed out in the "sloppy" police work that occurred did not contradict the basic facts shown by the evidence, in essence arguing what the Court of Appeals stated in its opinion affirming Cochran's conviction, that "[t]he evidence against Cochran was overwhelming." *Cochran*, 309 Fed. App'x at 3. This interpretation of the comments is particularly borne out by the the prosecutor's preface reminding the jury that "the defense has no burden whatsoever to ask any particular questions or to disprove anything." Because the prosecutor's comments simply pointed out that the evidence and arguments offered by the defense had not controverted the basic facts of the case, they were not improper. *See United States v. Jackson*, 540 F.3d 578, 597 (7th Cir. 2008); *United States v. Morris*, 498 F.3d 634, 643 (7th Cir. 2007); *United States v. Snook*, 366 F.3d 439, 444-45 (7th Cir. 2004).

Finally, even if this court were to assume that all of the prosecutor's comments which Cochran has identified were improper, and consider their cumulative impact, it would still find that Cochran is not entitled to relief. If the comments were improper, the analysis turns to whether Cochran suffered any prejudice from them, as measured by consideration of the six *Darden* factors: 1) whether the prosecutor misstated the evidence; 2) whether the remarks implicate specific rights of the accused; 3) whether the defense invited the response; 4) the instructions given to the jury; 5) the weight of the

evidence against the defendant; and 6) the defendant's opportunity to rebut. *Bartlett v. Battaglia*, 453 F.3d 796, 802 (7th Cir. 2006) (citing *Darden*, 477 U.S. at 181-82 (1986)). The most important of these factors is the weight of the evidence, *United States v. Serfling*, 504 F.3d 672, 677 (7th Cir. 2007), and as already noted, the Court of Appeals accurately described the evidence against Cochran as "overwhelming" when affirming his conviction. *Cochran*, 309 Fed. App'x at 3.

The remaining factors, for the most part, do not weigh in Cochran's favor either. The prosecutor did not misstate any of the evidence. The court's instructions to the jury, both preliminary and final, instructed that the lawyers' questions and statements were not evidence, and immediately prior to final arguments the court told the jurors that those arguments were not evidence. The court's final instructions also informed the jury that Cochran's absence during the trial and his failure to testify were both an exercise of his rights and should not be considered against him in any way. The defense had the opportunity to rebut all of the statements except the final comments which Cochran believes were an indirect comment on his failure to testify. Those remarks, however, were invited by defense counsel's closing argument suggesting that the jury should disbelieve the evidence of Cochran's post-arrest statement to the police because it had not been videotaped or otherwise recorded, and that many states require such statements to be recorded. Tr., Vol. II p. 31. The only factor weighing in Cochran's favor is that the remarks implicated his specific rights. On the balance, the factors weigh clearly in favor of a finding that Cochran suffered no prejudice.

**Ground III**

Cochran's third ground, as he states it, is that he was "denied due process, and Impartial Judge and suffered Trial Court Error, Abuse of Discretion, and a Bias[ed] Judge Laboring Under a Conflict Of Interest." Attachment for Ground III (DE # 346-5) p. 1. In support of this ground Cochran notes "[a]s an initial matter" that during his review of the "so-called Record of Proceedings" he noticed that "a lot of the comments of the Judge, and others have been changed or omitted." This baseless accusation is nowhere supported by any specifics and will not be considered further.[9]

As for "trial court error" and "abuse of discretion," Cochran argues that the court violated his fifth and sixth amendment rights to represent himself and to be present at his trial, because he not did waive the right to represent himself by engaging in conduct that was so "serious and obstructionist" that it warranted the court revoking his self-representation and forcing him to go to trial with appointed defense counsel. *See Faretta v. California,* 422 U.S. 806, 834 n. 46 (1975); *Illinois v. Allen*, 397 U.S. 337 (1970). On this, the court can only say that it disagrees with Mr. Cochran's assessment of the entire record, which it believes speaks in volumes.

---

[9] Cochran requests that he be furnished the "original 'audio back-up' tapes" made by the court reporter. Attachment for Ground III, p. 1. Back-up audio tapes of proceedings kept by court reporters are not judicial records subject to inspection when no reason has been shown to distrust the accuracy of the stenographic transcript. *Smith v. United States Dist. Court Officers*, 203 F.3d 440, 442 (7th Cir. 2000). Although the recording of his sentencing proceeding is a judicial record filed with the clerk, Cochran could, therefore, have obtained a copy to review before preparing his motion. One sentence, buried in a 90-page memorandum in support of a motion that has already been filed, is not a sufficient and timely request.

As Cochran admits, he *chose* not to be present at his trial after the court revoked his pro se status, which the court did only after it became clear that the trial would never be able to proceed with Cochran presenting his own defense. For one thing, Cochran did not even acknowledge that he was on trial: in his view, the trial concerned an "entity" known as LARRY COCHRAN, since the indictment used capital letters to spell his name, and much of Cochran's pre-trial conduct in the courtroom amounted to a constant barrage of interruptions demanding that the court acknowledge that it lacked jurisdiction over him, the flesh and blood man, that the proceedings were a sham and that he should be allowed to leave immediately. Because the court believes that the record amply demonstrates that Cochran waived his right to self-representation, it need say nothing more to explain why it believes this ground is meritless.

Next, Cochran argues that this court violated his due process right to a fair trial by first allowing, and then failing to investigate and take steps to remedy, the alleged acts of prosecutorial misconduct which were addressed above in the discussion of Cochran's Ground II. Because, as was explained in the analysis of Ground II, the court does not believe that there was any prosecutorial misconduct and that, even if there was, it caused no prejudice, this argument will not be considered further.

Cochran argues next that the court committed error at sentencing because he was not furnished the presentence report ("PSR") prepared by the United States Probation Office prior to the sentencing hearing as required by FED. R. CRIM. P. 32(e)(2), and further, that the court violated *Apprendi v. New Jersey,* 530 U.S. 466 (2000), by sentencing

13

him based on a drug quantity that was neither charged in the indictment[10] nor submitted to and found by the jury.

As to the issue whether Cochran had adequate access to the PSR, to paraphrase and get to the heart of his argument, he contends that he tried to inform the court of this fact at his sentencing, but that the transcript does not show this because the court instructed the court reporter not to transcribe Cochran's remarks, and that the court refused to continue the hearing so that he might have time to review the PSR and prepare objections thereto. It is true that much of what Cochran said at his sentencing was not transcribed, because Cochran would not refrain from talking at the same time as this judge and the attorneys, and the court reporter cannot listen to, and accurately transcribe, two people talking at the same time. As Cochran himself stated at the sentencing hearing: "If you choose to carry on these proceedings, you will carry them on without me, or I will continue to talk throughout these entire proceedings because I would rather not be here." Tr., Vol. 3, p. 5.

What the sentencing transcript does reveal, is that Cochran's appointed counsel mailed Cochran a copy of the PSR, but when he attempted to meet with Cochran to go over it with him, Cochran refused to see him. Tr., Vol. 3, pp. 2-3. The transcript also shows that, while the court reporter was still able to transcribe Cochran's remarks, when the court attempted to ask him whether he had been able to review the PSR, he

---

[10] This contention is essentially another iteration of Cochran's argument that the indictment was defective because it specified that he possessed a "mixture or substance" containing cocaine base, without identifying what that mixture or substance was.

14

responded with a lengthy monologue to the effect that he would rather not participate; that there was no indictment against him; that the court was proceeding in admiralty maritime jurisdiction; and that the sentencing was a commercial proceeding in which he, as a "sovereign secure party creditor, had discharged the charges against him." Vol. 3, pp. 3-5. When he was finished, the court asked him: "Did you review the presentence report and the addendum that was furnished to you sometime before this morning?" Cochran's immediate response was "Did you supply an indictment with my true name on it?" and the following colloquy ensued:

> THE COURT: Just answer.
>
> THE DEFENDANT: No you haven't. You never compelled the prosecutor to produce my liability to the statutes.
>
> THE COURT: Did you look at the presentence report and addendum --
>
> THE DEFENDANT: I haven't received anything.
>
> THE COURT: Never did.
>
> THE DEFENDANT: Never wanted it.[11]
>
> THE COURT: Even though the record says that you did?
>
> THE DEFENDANT: Don't want it. The record can say anything because you make the record.
>
> THE COURT: Okay.

---

[11] The transcript actually reads at this point, with spacing and capitalization as shown: "THE DEFENDANT: DefendantNever wanted it." This appears to be a formatting error made by the court reporter.

> THE DEFENDANT: I had no idea who was even doing the prosecuting until recently. It is you that prosecutes the defendant not the prosecutor.

Tr., Vol. 3, pp. 5-6. The court then tried to proceed, but Cochran repeatedly interrupted requesting that the "military flag" be removed from the courtroom. Shortly after that the court reporter was instructed not to transcribe what Cochran was saying, when he was talking at the same time as this judge. Vol. 3, p. 7.

If Cochran had simply answered the question the court asked—"Did you review the presentence report and the addendum that was furnished to you sometime before this morning?"—by informing the court that he had not received the PSR in time to adequately review it, to discuss it with his attorney and, if necessary, prepare his own objections, then the court could—and would—have considered continuing the sentencing hearing to allow Cochran to do so. Instead, because of Cochran's obstructionist behavior, and declaration "[d]on't want it [the PSR]," that opportunity was lost.

It is true, as Cochran argues, that the record does clearly show that he did not have access to the report 35 days prior to his sentencing, as is required by FED. R. CRIM. P. 32(e)(1): the report was prepared on January 11, 2008, with revisions as late as January 23, 2008, and Cochran's sentencing was on January 25, 2008. However, Rule 32(e)(1) allows waiver of this minimum period, and by refusing to answer the court's questions regarding the PSR, and telling the court he didn't want it, Cochran has either waived, or forfeited, his right to that 35-day period. *United States v. Jacques*, 345 F.3d 960,

962 (7th Cir. 2003); *see also United States v. Rone*, 743 F.2d 1169, 1174 (7th Cir. 1984) ("As with other rights which are personal to the defendant, the defendant would, of course, be able to waive this right to read the [presentence] report."). Moreover, because he refused to inform the court that he wanted more time to review the PSR, and refused to meet with his counsel to discuss the PSR when he had the opportunity to do so, he cannot show how his shortened access period caused him prejudice. Whatever failings in regard to Cochran's access to the PSR may have occurred, Cochran's behavior operated as a waiver or forfeiture and negated any prejudice that might have occurred, and so he cannot claim error violating his rights now.[12]

As to Cochran's argument that his sentence violates *Apprendi*, the indictment charged him with possessing, with intent to distribute, "five (5) grams or more" of a mixture or substance containing cocaine base. The jury returned a special verdict showing that it found that the amount of cocaine base involved in the offense was five grams or more. (DE # 271.) The statutory penalty for an offense involving five grams or more of a mixture or substance containing cocaine base is a term of imprisonment of not less than five, and not more than forty, years. 21 U.S.C. § 841(b)(1)(B). The court sentenced Cochran (on January 25, 2008, long after *United States v. Booker*, 543 U.S. 220 (2005), made the United States Sentencing Guidelines advisory) to a term of imprisonment of 405 months, which is less than forty years. In short, there was no constitutional sentencing violation based on the principal announced in *Apprendi*.

_____

[12] Additional discussion relevant to this issue appears *infra* at pp. 27-29.

As his last assertion under Ground III, regarding a "Bias[ed] Judge Laboring Under a Conflict Of Interest," Cochran, explaining that his grounds are "clarified in the Motion for Recusal and Affidavit of Bias accompanying this Motion and Memorandum,"[13] Attachment for Ground 3 (DE # 346-5) p. 3, lists numerous rulings made by the court during the course of the proceedings which he is dissatisfied with and which he believes were erroneous. As the court explained in denying Cochran's Motion for Recusal, in an order entered October 6, 2009 (DE # 355), which the court now incorporates by reference, Cochran's allegations and dissatisfaction do not even begin to make a showing of personal bias or prejudice, and this argument will not be given further consideration.[14]

**Ground IV**[15]

Cochran's next-to-last ground is that he received ineffective assistance of counsel. As is well known, the test to determine whether an attorney has delivered ineffective assistance such that a defendant's Sixth Amendment right to counsel has been violated is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test has two

---

[13] DE # 348.

[14] Cochran again mentions, as he did in the motion for recusal, that the undersigned judge has a conflict of interest and should not have presided over the criminal case because Cochran filed an "International Tort Claim" against me with the United States Department of Justice. As explained in the order denying the recusal motion (DE # 355), I have no idea what he is talking about. Therefore, there is no known conflict of interest, and no need for further discussion of the issue.

[15] The court notes that pages 6 and 7 of Cochran's Attachment for Ground IV are in reverse order in the .pdf image of the addendum (DE # 346-6) in the court's electronic case file.

prongs. First, the "defendant must show that the performance of counsel fell outside the 'range of competence demanded of attorneys in criminal cases'–i.e., that it 'fell below an objective standard of reasonableness.'" *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption of competence. *Id*.

Second, the defendant must show that he suffered prejudice as a result of his counsel's ineffectiveness. *Id*. In other words, the defendant must demonstrate "a reasonable probability that, *but for* counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The court may address the prongs in whichever order it chooses, and should deny the claim if the defendant has made an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. In addition, while Cochran makes multiple allegations in support of his claims that he received ineffective assistance, it must be kept in mind that:

> [I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.

*Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone,* 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore,* 126 F.3d 876, 881-84 (7th Cir.

1997)). Thus, while the court addresses each of Cochran's arguments individually, it is counsel's aggregate performance that is the determinative issue.

Cochran argues that his trial counsel's first error was to fail to request a continuance of the trial, when he was appointed only two days before the trial commenced, and so did not have adequate time to thoroughly research the case and prepare an adequate defense. The short answer to this contention is that Cochran's attorney had been involved with the case since March, 2007, functioning as "stand-by" counsel the majority of the time, and so was in the best position to determine whether he needed more time to prepare when he took over the defense. However, Cochran presents several specific examples of the mistakes he believes counsel made, which would have been avoided, had counsel taken more time to prepare. Therefore, the court will briefly address each, to explain why, viewed individually or cumulatively, they do not show that a colorable claim of ineffective assistance of counsel exists.

First, and what perhaps is Cochran's overarching argument, is that his counsel failed to understand, and present, Cochran's preferred theory of defense, which Cochran believes was the only viable defense. Cochran's preferred defense was (and remains) his contention that the indictment was fatally defective and that the court lacked jurisdiction over both the charges and over him as a flesh-and-blood man. Cochran believes that if his defense counsel had continued to pursue this defense–which Cochran preserved via pretrial motions—all the way through appeal, he could have secured dismissal of the indictment. As has been explained herein, and in

numerous orders dealing with Cochran's pretrial motions, Cochran's arguments in this vein, no matter how deeply he mines them, are meritless, and so he cannot demonstrate that he suffered any prejudice because appointed counsel ignored, and did not pursue, this defense strategy.

Second, Cochran argues that with more time to prepare, his attorney could have had Cochran's (alleged) confession to the Hammond Police excluded from the evidence. As is common, the substance of Cochran's statement following his arrest was typed up by the police, and then signed by Cochran. Cochran denies that he signed the document, and argues that his attorney was ineffective for not retaining a handwriting expert to prove that his alleged signature at the bottom of the document was either forged or placed there by using a photocopier. If counsel had done so, Cochran argues, "there is a good possibility, once it was proven that the signature on the statement is a forgery or photocopy, the statement would have been excluded or deemed inadmissible." Attachment for Ground IV (DE # 346-6), p. 6.[16]

This argument conveniently ignores a glaring flaw. Cochran began acting as his own counsel on December 29, 2006. During the next 11 months, Cochran filed literally dozens of motions (and other requests and documents) totaling hundreds of pages in length. Despite all that, Cochran—who represented himself until the eve of trial—never requested that the court appoint a handwriting expert. In other words, he is criticizing his attorney for failing to do something that he himself never saw necessary. In essence,

---

[16] Which would be page 7, if the pages of the document were in the correct sequence.

Cochran's failure to take that step disproves his forgery assertion to the extent that the court concludes both that his attorney's failure to do so did not fall below an acceptable level of performance, and neither did Cochran suffer any prejudice.

Third, Cochran argues that his attorney did not have the time to interview potential defense witnesses, and as a result failed to challenge, by pretrial motion, problems with the chain of custody of the drugs allegedly seized from him, or to present testimony on that and other important issues at trial. As to the chain of custody, Cochran argues that if his attorney had filed a pretrial motion, the drug evidence might have been excluded from the trial. But, just as with his contention regarding the alleged forged signature, Cochran does not explain why he himself never filed any such pretrial motion during the 11 months leading up to trial during which he represented himself. When his attorney took the case over a few days before trial, the deadline for filing any such motion had long passed, and any failing in this regard lays at Cochran's feet, not his counsel's.[17]

---

[17] Cochran argues that even without requesting a continuance, his counsel erred by not seizing an opportunity to have the evidence suppressed on the morning of trial, as allowed by the court's order of April 10, 2007, granting him leave to present evidence immediately prior to trial of tampering. Attachment for Ground IV, p. 10. Perhaps counsel could have attempted to do so, but this is not a completely accurate description of the leave granted by the April 10 order. That order addressed a government motion in limine seeking to prohibit Cochran from mentioning penalties at trial. Cochran's (pro se) response was that increased penalties for larger quantities provide an incentive to the police to plant evidence, and at trial he would prove that had occurred. The April 10 order stated that if Cochran could proffer such evidence on the morning of trial, the government's motion in limine would be denied. Cochran's defense counsel did not attempt to do this on the morning of trial, but did point out repeatedly during the course of trial significant disparities in the evidence of the quantity of drugs seized from Cochran.

As to the failure to call witnesses at trial, Cochran states that Hammond Police Sergeant in charge of the evidence inventory would have testified that the drug evidence was inventoried two days afer its seizure, putting the chain of custody in question;[18] that Tim Ball (a person that the Hammond Police witnesses observed at a car dealer engaging in what they thought was a drug deal with Cochran) would have testified that no drug deal took place; and that there were other witnesses who would have testified that Cochran works two jobs and does not deal drugs. Cochran does not offer affidavits from these potential witnesses as a proffer of their testimony, however, leaving the court with only his word—his speculation—as to their testimony, which is an insufficient basis on which to rest an ineffective assistance claim. *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991). Even if the witnesses would have testified as Cochran asserts, a problem in the chain of custody, and lay opinion from his acquaintances that he is not a drug dealer, weighed against the testimony of several officers that the drugs at issue were seized from Cochran, and his own admission to the police that he delivered drugs several times a week, was not at all likely to have an impact. Thus, Cochran cannot show that the failure to call these witnesses caused him any prejudice.

Fourth, Cochran argues that because of counsel's inadequate preparation, he was unaware of the order in limine as to the tip the police received regarding Cochran's

---

[18] Defense counsel did point out that trial exhibit A (exhibit L-1 to Cochran's § 2255 motion) showed that it took 2 days for the drugs to be logged into the evidence room. Tr., Vol. 1 p. 147-148.

drug dealing, failed to object or move for a mistrial the first time the prosecutor referred to the tip, and remained silent during the 45 (by Cochran's count) additional times the prosecutor did so. First off, Cochran is factually wrong. His counsel did object the first time the prosecutor mentioned the tip, during opening statements, but that objection was overruled.[19] Tr., Vol. 1, p. 73. The court's review of the transcript indicates that the prosecutor mentioned the tip only one more time before the defense itself put the substance of the tip into evidence. After that occurred, subsequent objections would have been fruitless, and so it was not error to fail to make them.[20] Moreover, as has been explained above, the jury's knowledge of the substance of the tip, in light of the weight of the evidence against Cochran and consideration of the other *Darden* factors, caused no prejudice. Therefore, this aspect of Cochran's claim fails both prongs of the *Strickland* analysis.

Fifth, and going to the point made immediately above, Cochran argues that because of counsel's unfamiliarity with the case, he unnecessarily introduced into evidence the police report containing the substance of the tip, Cochran's criminal record and parole status, and alleged gang affiliation. Cochran argues that there was no reason

---

[19] Despite the broad wording of the order in limine, the order was understood, in the context of Cochran's motion in limine and response, to prohibit the government from mentioning the substance of the tip. The prosecutor's remark during opening statement that a tip had been received did not reveal the substance of the tip, but allowed the jury to follow the story by understanding the police had a reason to be surveilling Cochran.

[20] To illustrate, as soon as the prosecutor asked a question about whether Cochran was a convicted felon currently on parole, defense counsel objected. The objection was overruled because the information was in the police report that the defense had just put into evidence. Vol. 1 p. 207.

to introduce the report into evidence,[21] and cites *Harding v. Sternes*, 380 F.3d 1034 (7th

Cir. 2004), and *United States v. Irvin*, 87 F.3d 860 (7th Cir. 1996), as cases standing for the

proposition that this constitutes ineffective assistance of counsel *per se*.

Cochran has misunderstood the analysis in both of those case. While the court in

*Harding* found that defense counsel's introduction of the otherwise inadmissible

evidence of his client's prior convictions met the performance prong of *Strickland* by

falling below an objective standard of reasonableness, 380 F.3d at 1045, the court then

went on to consider the prejudice prong, and found that an ineffective-assistance claim

was not viable because prejudice was unlikely to have resulted. *Harding*, 380 F.3d at

1045-46.[22]

The *Irvin* case did not involve ineffective assistance, but instead an analysis

under FED. R. EVID. 403, finding that the district court had abused its discretion by

allowing evidence of gang affiliation to be introduced at the joint trial of two defendants

charged with possession, with intent to distribute, methamphetamine. *Irvin*, 87 F.3d

863-64, 866. However, the court then went on to consider whether prejudice had been

---

[21] Actually, there was. The evidence in this case would leave any attorney grasping at straws in the search of a viable defense. Counsel introduced the report as part of his attempt to cast doubt on the entire investigation by showing large discrepancies in the various police reports and accounts of the amount of crack cocaine seized from Cochran and the time the events had occurred. While this strategy proved unsuccessful, it was still better than the defense Cochran believes should have been pursued, the meritless contention that the indictment contained a fatal defect and that the court had no jurisdiction over him, the flesh and blood man.

[22] To be accurate, the holding in *Harding* was that the district court did not err in determining that the state court's determination of the prejudice factor was not unreasonable.

caused. It reversed the conviction of one defendant as to whom there was very little evidence, but affirmed the conviction of the other, whom it found had not suffered prejudice due to the strength of the evidence, including an admission to the police after his arrest that he had possessed the drugs. *Id*. at 867.

The prejudice aspect of both cases Cochran cites is relevant to the present case. Even assuming that the deficient performance prong of *Strickland* is met—and defense counsel himself admitted he made a mistake by not seeking redaction of the police report before admitting it into evidence, Tr., Vol. 2 p. 5—the court is firmly of the opinion that Cochran suffered no prejudice. As has been explained above, given the weight of the evidence against Cochran, it is highly unlikely that this evidence had a role in the jury's determination of guilt. The jury heard several officers testify that the crack cocaine was seized from Cochran after plastic baggies of it fell from his pants legs during a traffic stop; that more of it and drug paraphernalia were seized from his car; and that after his arrest, he admitted possessing, and delivering, drugs on a regular basis. The jury would have convicted on this evidence alone, and so this aspect of Cochran's claim of ineffective assistance fails because he cannot demonstrate prejudice.

Sixth, Cochran argues that he received ineffective assistance of counsel when his attorney failed to make an objection to, and a request for mistrial based on, the prosecutor's indirect reference to his failure to testify in his own defense, during rebuttal closing argument. As has been explained above, the court finds that, in context, the prosecutor's comments were neither intended to be a comment on Cochran's failure

to testify, nor would they have been understood by the jury as such. Therefore, this aspect of Cochran's ineffective assistance claim fails because his attoreny's performance was not deficient.

Seventh, Cochran describes a number of issues, already largely discussed above, in regard to his attorney's conduct in regard to Cochran's involvment with the preparation of, access to and review of his PSR prior to his sentencing hearing. And, as further discussed above, all of those issues—to the extent there were any—could have been addressed, and remedied, if Cochran had not refused to meet with his attorney prior to the sentencing hearing, and/or simply answered the court's questions and informed the court of the concerns he alleges now. Instead, as is explained above at pp. 14-17, Cochran refused to participate in the proceedings.

In this regard, in addition to the portions of the sentencing hearing quoted in this order above, it should also be noted that before pronouncing sentence, when the court addressed Cochran directly and gave him a last opportunity to address the court, the following occurred:

> THE COURT: Now, Mr. Cochran, do you want to make a statement in your own behalf or present any information in mitigation of punishment before I sentence you?
>
> THE DEFENDANT: I would like to ask why you haven't ruled on any of the pretrial filings; that's what I'd like to ask.
>
> THE COURT: I won't answer those questions. Do you have any statement to make –

THE DEFENDANT: Let the record reflect that the judge is in dishonor.[23] Pass whatever you want to pass. Has nothing to do with me. Could care less.

THE COURT: Okay. Anything else, sir?

THE DEFENDANT: I would like to leave.

THE COURT: No. Anything else sir?

THE DEFENDANT: I'd like you to answer my question.

THE COURT: No. Anything else, sir?

THE DEFENDANT: Let the record reflect that you refuse to answer my question.

THE COURT: Anything else, sir?

THE DEFENDANT: Anything else from you?

THE COURT: Oh yeah. Lots.

THE DEFENDANT: There is nothing that I can say that's going to seem to make you obey the true law.

THE COURT: I see. Okay.

THE DEFENDANT: So what else is there to say except for the fact that you've just sentenced me – are trying to sentence a human being for a corporate fiction in a military court.

THE COURT: Okay. Anything else?

THE DEFENDANT: A court operating in admiral [sic] maritime jurisdiction; that's ridiculous.

_____

[23] The transcript actually reads at this point, with spacing and capitalization as shown: "THE DEFENDANT: DefendantLet the record reflect that the judge is in dishonor." This appears to be a formatting error made by the court reporter.

THE COURT: Anything else, sir?

THE DEFENDANT: Is this court operating under admiralty maritime jurisdiction?

THE COURT: Anything else, sir?

THE DEFENDANT: You're refusing to answer any question that I ask?

THE COURT: Yes. Anything else?

THE DEFENDANT: Well, I'm refusing to stay.

. . .

THE COURT: You have nothing more to say in mitigation?

THE DEFENDANT: I refuse to participate or cooperate in these proceedings in any way.

Tr., Vol. 3, pp. 10-12. The hearing continued further in this vein. This amply illustrates why the court finds that by his conduct and by his statements, Cochran either waived or forfeited the rights he now raises, meaning that his attorney's performance caused him no prejudice. *Cf. United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000) (even absolute right can be impliedly waived or forfeited by remaining silent at critical junctures in proceedings). Any prejudice that may have resulted came from Cochran's refusal to meet with his attorney, and to participate in the proceeding.

Eighth, Cochran asserts that his attorney was ineffective because by failing to prepare for the sentencing, he neglected to make objections to erroneous information in the PSR (such as drug quantity) and failed to present any mitigating factors to the court. The discussion immediately above is relevant to this assertion. By refusing to meet with

29

his attorney to discuss the PSR and by refusing to participate in the sentencing hearing, Cochran has waived this aspect of his claim, and/or his attorney's performance caused him no prejudice. In addition, as to the performance aspect of ineffective-assistance analysis, the court notes that Cochran has not shown what evidence his counsel should have offered at sentencing, other than Cochran's own say-so, on issues such as drug quantity. And much of Cochran's say-so is simply wrong.[24] Thus, the court finds that Cochran's assertions here fail the performance prong of the *Strickland* analysis in addition to the prejudice prong.

Ninth, Cochran argues that his attorney was ineffective during his appeal because he failed to raise the only issues that had any chance of success on appeal.[25] Cochran outlines these issues starting on page 19 of his Attachment for Ground IV, starting with his assertion that the indictment was fatally defective, and continuing with all of the issues discussed above, i.e., prosecutorial misconduct during the trial, errors at sentencing, etc. For the reasons given herein, all of those issues are meritless. Thus, his attorney did not omit "significant and obvious" issues from the appeal which were

---

[24] For example, he asserts that there was an erroneous "drug calculation for crack while jury found defendant guilty of cocaine base only." Attachment for Ground IV, p. 18. "Crack" is, of course, simply the street name for cocaine base; the indictment charged Cochran with possessing, with intent to distribute, "a mixture and substance containing a detectable amount of cocaine base, commonly known as "crack" cocaine;" court's final jury instruction no. 8 explained that cocaine base is commonly called "crack" or "crack cocaine base;" and the verdict form returned by the jury stated that the jury found Cochran guilty of knowingly possessing, with the intent to distribute, "cocaine base."

[25] Cochran fails to note that one of the issues he raises as an example of prosecutorial misconduct, a comment on his absence from the trial, was raised as an issue in his direct appeal.

"clearly stronger" than were raised, and so did not perform deficiently. *Stallings v. United States,* 536 F.3d 624, 627 (7th Cir. 2008); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).

Tenth, and finally, Cochran argues that his counsel should have sought to withdraw from the case because he labored under an obvious conflict of interest, having been named in the same "International Tort Claim" as the undersigned. As has been explained previously, the undersigned has no idea what an "International Tort Claim" is, and does not understand what Cochran is talking about. As a result, the court cannot find that this alleged conflict of interest should have caused defense counsel to withdraw.[26]

For all of the reasons just given, consideration of Cochran's motion and the record shows that it is plain that Cochran does not have grounds for a claim that he received ineffective assistance of counsel at trial, sentencing or on appeal.

**Ground V**

Cochran asserts that the cumulative effect of all of the violations and errors which he alleges occurred denied him due process and a fundamentally fair trial. For all

---

[26] Although the court does not think it to be so, if by "International Tort Claim" Cochran means his civil case 2:08 CV 306 filed in this court, which named defense counsel as a defendant, that complaint was docketed on October 21, 2008, and the case was dismissed pursuant to 28 U.S.C. § 1915A on October 27, 2008, before process was served. October 27, 2008, was the day the Court of Appeals heard oral argument in Cochran's direct appeal, 08-1284. Thus, it is likely that defense counsel was not aware of the case at that time, and may still be unaware of the case.

of the reasons explained above, the court believes that very few errors, if any, occurred, that the proceeding was fundamentally fair and Cochran was not denied due process.

## CONCLUSION

After due consideration of Cochran's motion, including thorough review of his lengthy attachments and exhibits, the court is convinced that it "plainly appears from the motion . . . and the record of prior proceedings" that Cochran is not entitled to relief, requiring the summary dismissal of his § 2255 motion. RULE 4, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Accordingly, Cochran's motion pursuant to 28 U.S.C. § 2255 (DE # 346) is summarily **DENIED** and **DISMISSED**. The clerk shall terminate his motion to proceed in forma pauperis (DE # 347) as moot. The clerk shall **ENTER FINAL JUDGMENT** dismissing the parallel civil cause (2:09 CV 275) initiated by the motion proceeding with prejudice.


**SO ORDERED.**


DATE: November 30, 2009


 s/James T. Moody                        
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT