UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.         )<br>)<br>LARRY COCHRAN        ) | No. 2:06 CR 114 |

## OPINION and ORDER

Before the court are defendant Larry Cochran's motions for compassionate release pursuant to 18 U.S.C. § 3582(c) and Section 603 of the First Step Act. (DE ## 554, 590.) For the reasons that follow, the motions are denied.

**I.     BACKGROUND**

In April 2006, defendant was arrested and charged with possession with intent to distribute five grams or more of cocaine base (commonly referred to as crack cocaine). (DE # 2.) During proceedings before both the Magistrate Judge and the undersigned, defendant engaged in disruptive and obstructionist behavior. He was removed from both courtrooms. He also repeatedly denied his identity. He impeded the court's attempts to determine his competency to stand trial, refusing to participate in relevant motion hearings and refusing to be put under oath. He was disruptive during his trial, and his pro se status was revoked. He was removed from the courtroom several times. At the conclusion of defendant's trial, a jury found him guilty. (DE # 271.)

The court initially sentenced defendant to 405 months incarceration, at the high end of the applicable guidelines range based on a number of factors, including defendant's utter contempt for the criminal proceeding and lack of remorse, the

quantity of drugs he admitted to receiving, and his lengthy criminal history. (DE # 280.) He received an adjustment for obstruction. (*Id.*)

Defendant spent the next decade (and then some) filing numerous letters, motions, and petitions with this court, as well as the Seventh Circuit Court of Appeals. In 2015, the court reduced defendant's original 405-month sentence to 327 months under Amendment 782 to the Sentencing Guidelines. (DE # 456.) In 2019, the court further reduced defendant's term of imprisonment to 240 months pursuant to 18 U.S.C. § 3582(c) and Section 404 of First Step Act of 2018. (DE # 577.) Currently, defendant's projected release date is June 18, 2023, approximately three years from now. (BOP Inmate Locator, https://www.bop.gov/inmateloc/, accessed May 1, 2020.)

Defendant has now moved, pursuant to Section 3582(c) and Section 603 of the First Step Act, for "compassionate release." (DE ## 554, 590.) Defendant is 57 years old. According to defendant, he is "BLIND, Wheelchair Bound, Physically Handicapped, and in Constant Pain All Day and All Night . . . suffers from A Severe Panic Attack Disorder with Agoraphobia, PTSD, Major Depressive Disorder, and Several Breathing Disorders which cause him to wear a Breathing Machine during the Night and sometime in the Day." (DE # 554 at 3.) He claims he spends "more than 90% of his waking hours in a Wheelchair, Urinating and Defacating on himself Constantly." (*Id.* at 4.) He further argues he cracked his spine in four places, "causing Severe Permanent Nerve Damage Throughout his Entire Body," that he has "Erosive Osteoarthritis," that he has no use of his right hand, that he has six to ten "Severe Panic Attacks Everyday,"

2

that he is in remission from cancer, has an enlarged prostate, that he "cannot maintain any type of Self-Care," and that he needs assistance with dressing, using the toilet, showering, transportation, eating, and taking medication. (*Id.* at 4; DE # 590 at 3.) Defendant states that he takes several medications per day, which do little good. (*Id.*) Defendant further claims that he previously had a stroke, and currently has hypertension, hypoglycemia, PTSD, and sleep apnea. (DE # 590 at 3.)

Defendant claims that on January 5, 2019, he filed a request for compassionate release with the staff at FCI Elkton, the facility housing him. (DE # 590 at 1.) Defendant further submitted to this court what he claimed was a copy of a letter from the warden of that facility dated April 17, 2019, in which the warden appeared to "approve" defendant's request for compassionate release. (DE # 590 at 11-12.)

The Government has provided this court with a copy of a letter from the warden at FCI Elkton dated April 17, 2019, in which the warden states that defendant's request for compassionate release was "denied." (DE # 610-1.) The circumstances surrounding the existence of both an approval letter and a denial letter with the same date from the same warden are not entirely clear.

Defendant's request then made its way to the Bureau of Prisons ("BOP") Medical Director, Dr. Jeffery D. Allen. In a letter dated August 12, 2019, Allen concluded that defendant:

> can feed self with set up, can bathe self but needs help getting in and out of the shower, uses adaptive equipment to dress, and can groom himself independently. Mr. Cochran does not meet the BOP debilitated RIS criteria at this time. Although Mr. Cochran requires some assistance with many of

3

>his ADL and IALD needs, it is largely comprised of set-up assistance, after which he is independent. When he is in his wheelchair, he is mobile and is not confined to his room.

(DE # 610-2.)

Next, defendant's request was examined by Ken Hyle, Assistant Director/General Counsel for the BOP. In a letter dated October 7, 2019, Hyle stated:

>We have carefully reviewed the documentation accompanying this request and have consulted with BOP's Medical Director.
>. . .
>[Defendant] also is considered legally blind. He is dependent upon a wheelchair for mobility, but is independent with transfers. He spends the majority of his time in his wheelchair or bed and requires moderate assistance with the majority of his activities of daily living (ADLs) and instrumental ADLs. However, he is not completely disabled, remains mobile, and is capable of performing most of his selfcare.
>
>As Mr. Cochran is not completely disabled and remains capable of performing most of his self-care, he does not meet the criteria for a RIS under section 3(b). Accordingly, his RIS request is denied.

(DE #610-3.)

While defendant's request was moving through the various levels of review within the BOP, defendant meanwhile filed a motion with this court for compassionate release on February 11, 2019. (DE # 554.) With this motion, he included the letter purporting to indicate that his initial request had been "approved" by the warden at FCI Elkton. (DE # 554 at 3.) In light of what appeared to be an initial approval within BOP channels, the court requested a response from the Government, as an approval from within the BOP would render moot defendant's request for the same relief from

4

this court. (DE # 609.) The Government replied with copies of the aforementioned letters from administrators at the BOP who reviewed defendant's request.

## II.  ANALYSIS

### A.  Exhaustion

As explained above, Section 3582(c)(1)(A)(i) requires a defendant to exhaust all remedies before moving for compassionate release. Specifically, an inmate may file a request after receiving a BP-11 response, a denial from the General Counsel, or the lapse of 30 days from the receipt of a request for compassionate release by the warden of the inmate's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1).

In this case, no argument is made that defendant failed to exhaust administrative remedies, and the court perceives no such barrier either. Defendant's February 11, 2019, motion appears to have been made at least 30 days after the warden received his initial request, which he claims was made on January 5, 2019; thus, defendant appears to have satisfied Section 3582(c)(1)'s exhaustion requirement.

### B.  Compassionate Release Analysis

The court is authorized to reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Also, any reduction must be "consistent with applicable policy statements issued by the Sentencing Commision." *Id.* The relevant Sentencing Guidelines policy statement, Section 1B1.13, provides that the court must determine

5

that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Finally, the court should consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. U.S.S.G. § 1B1.13.

### 1. *Extraordinary and Compelling Reasons*

Application Note 1 to U.S.S.G. § 1B1.13 defines an "extraordinary and compelling" situation as one involving a prisoner who has "a serious . . . medical condition that substantially diminishes the ability . . . to provide self-care within the environment of the correctional facility." *Id.*

Defendant has provided dozens of pages of medical records, largely confirming the major maladies he asserts as a basis for the present motions, particularly blindness and the need for use of a wheelchair. Most relevant and recent is the assessment of Dr. John Dunlop in January 2019, in which Dr. Dunlop concludes that defendant is "[s]table yet requires aide extensively for daily living." (DE # 590 at 8.)

The court affords defendant the benefit of the doubt and assumes that he meets the standard set forth in Section 1B1.13 for purposes of determining that a defendant has a serious medical condition substantially diminishing the ability of the defendant to provide self-care, though the court notes that other district courts have come to the opposite conclusion regarding individuals with various debilitating conditions. *See, e.g., United States v. Bunnell,* No. CR14-00119-001-PHX-DGC, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (defendant "suffers from arthritis, sciatica, bulging lumbar discs 2-5,

6

scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a wheelchair, but none are terminal illnesses or substantially diminish ability to provide self-care within the environment of a correctional facility); *United States v. Clark,* 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (defendant suffering from declining health, diabetes, kidney failure, and back problems requiring a walker did not demonstrate that condition substantially diminished ability to provide self-care within the corrections environment or that she was not expected to recover).

### 2. *Danger to Society*

Next, the court must determine whether defendant would present minimal danger if released. U.S.S.G. § 1B1.13; 18 U.S.C. § 3142(g). Defendant argues that, due to all of the medical conditions outlined above, he would present no danger to society if released from prison. The Government contends that defendant was a "menace to society" before his incarceration, and that prison has not changed him. (DE # 611 at 9.)

The court is aware of defendant's criminal history and truculent interactions with the justice system. Around age 20, defendant began engaging in crimes such as illegally using a credit card, check fraud, and residential burglary. (DE # 450-1 at 7-10.) He continued with further burglary charges, retail theft, failure to return to detention from work release, perjury, and a charge of refusal to identify himself. (*Id.* at 10-13.) Defendant has used false names, social security numbers, and dates of birth, even while under oath on some occasions. (*Id.* at 13.)

7

At the age of 43, defendant was indicted in this criminal case for possession with intent to distribute crack cocaine. Defendant was disruptive during proceedings before both the Magistrate Judge and the undersigned, and was removed from both courtrooms. He repeatedly denied his identity. and received a sentencing adjustment for obstruction.

Defendant is presently 57 years of age. He is also, by all accounts, largely wheelchair-bound and blind. However, the court, having interacted with defendant during trial and via defendant's extensive filings, is not convinced that these impairments have affected defendant to such an extent that he could not continue to orchestrate criminal activities upon release. Nor is the court convinced he would not be inclined to do so. Defendant was a member of the Black Gangster Disciples and there is no indication that he has ever held a legitimate job. (DE # 450-1 at 4, 17.) Further, in both state and federal criminal proceedings, defendant has demonstrated disrespect and hostility towards the law by repeatedly engaging in behavior seemingly directed at impeding and evading the justice system.

While he may not be a likely candidate for a direct form of violent crime such as battery upon release, the court does not conclude that defendant's reentry into society would necessarily be benign. Despite his physical limitations, he is clearly mentally capable of forming detailed strategies, as he has filed with this court, as well as the Court of Appeals, dozens of documents, letters, motions, petitions for writs, and the like, filled with legal concepts and complex arguments. He is clearly mentally capable of

8

reengaging in the drug distribution world, and such activity would certainly result in physical harm to members of society. *United States v. Brock,* 433 F.3d 931, 935 (7th Cir. 2006) (explaining how drug dealing history rendered defendant a danger to the community in context of Section 3553(a) analysis). At this time, the court has little confidence that defendant would be law-abiding upon release. Therefore, to describe defendant as presenting a "minimal" danger to society would be a mischaracterization of what this court knows to be true about defendant's criminal history, as well as his past conduct and filings and the disdain for the rule of law that they represent.

      3.    *Section 3553(a) Factors*

Even if the court determined that defendant's conditions constituted an extraordinary and compelling reason for a sentence reduction *and* that he would present a minimal danger to society if he were released, the court would still be required to consider the factors of Section 3553(a) in exercising its discretion. 18 U.S.C. § 3582(c)(1)(A)(i). Section 3553(a) states:

  (a) Factors to be considered in imposing a sentence.—The court shall consider–

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

>(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for--

>(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission ...;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, a consideration of relevant Section 3553(a) factors weighs in favor of not granting defendant's petition for compassionate release. Defendant's offense was possession with intent to distribute crack cocaine, a drug that has plagued Northwest Indiana for decades. Further, defendant's criminal history is marked by several decades of engagement in crimes with an aspect of deceit and disregard for law enforcement.

Defendant's history in proceedings before this court also weigh against a reduction. As explained in detail above, defendant has consistently demonstrated a hostile and obstructionist attitude towards judicial proceedings. The court initially sentenced defendant to 405 months incarceration, at the high end of the applicable guidelines range based, in part, upon defendant's contempt for the criminal

proceedings. These aspects of defendant's personal characteristics and history weigh against a further reduction of defendant's sentence.

Defendant's projected release date is approximately three years from now. Requiring defendant to serve the remainder of his sentence would promote respect for the law and provide just punishment for defendant's offense. Abolishment or further reduction of defendant's sentence would not further either goal, especially as defendant's sentence has been twice reduced already. Further, society would receive some benefit from defendant serving the remaining three years of his sentence, as he will not be able to reengage in drug crimes while incarcerated. Requiring defendant to complete his sentence also has deterrent value, both for defendant as well as others.

    4.    *Summary*

As the court considers all of the factors outlined above, it is guided by the principle that compassionate release is an extraordinary event. *White v. United States,* 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (compassionate release due to medical conditions is "a rare event"); *United States v. Clark,* 3:13-cr-163-FDW-1, 2019 WL 1052020 (W.D.N.C. Mar. 5, 2019) (denying relief, which is "extraordinary"); *United States v. Gutierrez,* No. CR 05-0217 RB, 2019 WL 1472320 (D.N.M. Apr. 3, 2019) (same); *United States v. Casey,* No. 1:06 CR 00071, 2019 WL 1987311 (W.D. Va. May 6, 2019) (same). This case, while unfortunate, is not extraordinary, as evidenced by an examination of all of the circumstances detailed in this opinion.

Further, when the court weighs the relevant Section 3553(a) factors and the danger he may present to society upon release against the medical conditions he faces, the court concludes that compassionate release is not appropriate. As explained above, though he might not present direct, physical danger to members of the community in the event of release, his release would not be without risk and the court does not consider the risk of danger "minimal." Additionally, though defendant has physical challenges and appears to require assistance in many aspects of his life while incarcerated, the court is of the opinion that defendant is adequately capable of navigating prison life for another three years until his sentence expires. After weighing defendant's conditions and albeit limited ability to navigate prison life against considerations such as the severity of his crimes and risk of danger to the community upon release, the court declines to exercise its discretion to order defendant's release. *See United States v. Willis,* 382 F. Supp. 3d 1185, 1188–89 (D.N.M. 2019) (compassionate release not warranted for blind, wheelchair-bound defendant who required 24/7 medical care and had a life expectancy of 18 months, given severity of wire fraud).

The court's decision rests significantly on defendant's historical disregard of the rule of law, the justice system, and the importance of law-abiding behavior to the functioning of a thriving society. *United States v. Kincaid,* No. 06-30073, 2020 WL 1874113, at *4 (C.D. Ill. Apr. 15, 2020) (declining to order compassionate release due to severity of crime and defendant's lack of remorse, noting that "the choices we make during our lifetimes will sometimes make it difficult in the end"); *see also United States v.*

12

*Chambliss,* 948 F.3d 691, 694 (5th Cir. 2020) (affirming district court's decision to deny compassionate release despite medical eligibility, and judging it appropriate for district court to consider that defendant "clearly disregard[ed] all respect for the law" in coming to its decision). Defendant has an opportunity in the next three years to embrace these principles, so that he may reenter society upon the expiration of his sentence as a contributing, cooperating member of this community.[1]

### III. CONCLUSION

For the foregoing reasons, defendant's motions under 18 U.S.C. § 3582(c) and Section 603 of the First Step Act are **DENIED**. (DE ## 554, 590.)

**SO ORDERED.**

Date: May 1, 2020

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[1] There still remains the matter of defendant's submission purportedly from the warden of the facility housing him, which stated that defendant's initial request for compassionate release was "approved." The Government claims that the court should find that defendant committed a fraud upon the court when he submitted this letter, because BOP records indicate that the warden actually denied his request for compassionate release. Defendant responded to the Government's argument in this regard, claiming that he actually received *two* letters from the warden with the same date and content except one detail – one denied his request and one approved it. (DE # 619 at 1-2.) According to defendant, he submitted the approval letter to the court (but, notably, failed to mention that an alternate denial letter existed). He claims his case manager is lying, and that he did not commit any fraud.

It matters not. The court finds, for all of the reasons set forth in this opinion, that compassionate release is not appropriate. If defendant did indeed forge BOP documents, that fact would certainly lend further weight to the court's conclusion. However, to embark upon a fact-finding mission about a possible forgery by defendant at this time would be a fruitless endeavor, as the court's decision would be the same regardless. The issue may be reconsidered at a later date if necessary for this court to make any further decisions regarding modifications to defendant's sentence. At this point, though, the matter is inconsequential.

13