UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:06 CR 114 |
| | ) | |
| LARRY COCHRAN | ) | |

## OPINION and ORDER

Before the court is a collection of motions filed, *pro se*, by defendant Larry Cochran, most of which essentially request compassionate release pursuant to 18 U.S.C. § 3582(c) and Section 603 of the First Step Act. (DE ## 696, 697, 698, 699, 701, 702, 705, 710, 711, 713.) For the reasons that follow, all of the motions are denied, except one (DE # 697), which the court denies in part and takes under advisement in part.

I.  BACKGROUND

The court has thoroughly reviewed the history and background circumstances of defendant's case in its prior orders. (*E.g.*, DE ## 645, 693.) For the most part, the facts have not changed. Therefore, for the sake of clarity, consistency, and completeness, many of those facts are repeated verbatim below.

*Reiteration of Defendant's Background & History*

In April 2006, defendant was arrested and charged with possession with intent to distribute five grams or more of cocaine base (commonly referred to as crack cocaine). (DE # 2.) During proceedings before both the Magistrate Judge and the undersigned, defendant engaged in disruptive and obstructionist behavior. He was removed from both courtrooms. He also repeatedly denied his identity. He impeded the court's

attempts to determine his competency to stand trial, refusing to participate in relevant motion hearings and refusing to be put under oath. He was disruptive during his trial, and his pro se status was revoked. He was removed from the courtroom several times. At the conclusion of defendant's trial, a jury found him guilty. (DE # 271.)

The court initially sentenced defendant to 405 months incarceration, at the high end of the applicable guidelines range, based on a number of factors, including defendant's utter contempt for the criminal proceeding and lack of remorse, the quantity of drugs he admitted to receiving, and his lengthy criminal history. (DE # 280.) He received an adjustment for obstruction. (*Id.*)

Defendant spent the next decade (and then some) filing numerous letters, motions, and petitions with this court, as well as the Seventh Circuit Court of Appeals. In 2015, the court reduced defendant's original 405-month sentence to 327 months under Amendment 782 to the Sentencing Guidelines. (DE # 456.) In 2019, the court further reduced defendant's term of imprisonment to 240 months pursuant to 18 U.S.C. § 3582(c) and Section 404 of First Step Act of 2018. (DE # 577.) Currently, defendant's projected release date is July 28, 2023, approximately 1 year and 9 months from now. Federal Bureau of Prisons, *BOP Inmate Locator*, https://www.bop.gov/inmateloc/ (last accessed Nov. 3, 2021).

*Facts Related to Defendant's Condition*

Defendant is 58 years old. According to defendant's prior motions for compassionate release, he is "BLIND, Wheelchair Bound, Physically Handicapped, and in Constant Pain All Day and All Night . . . suffers from A Severe Panic Attack Disorder with Agoraphobia, PTSD, Major Depressive Disorder, and Several Breathing Disorders which cause him to wear a Breathing Machine during the Night and sometime in the Day." (DE # 554 at 3.) He claims he spends "more than 90% of his waking hours in a Wheelchair, Urinating and Defacating on himself Constantly." (*Id.* at 4.) He further argues he cracked his spine in four places, "causing Severe Permanent Nerve Damage Throughout his Entire Body," that he has "Erosive Osteoarthritis," that he has no use of his right hand, that he has six to ten "Severe Panic Attacks Everyday," that he is in remission from cancer, has an enlarged prostate, that he "cannot maintain any type of Self-Care," and that he needs assistance with dressing, using the toilet, showering, transportation, eating, and taking medication. (*Id.* at 4; DE # 590 at 3.) Defendant states that he takes several medications per day, which do little good. (*Id.*) Defendant further claims that he previously had a stroke, and currently has hypertension, hypoglycemia, PTSD, and sleep apnea. (DE # 590 at 3.) In some of his more recent filings, he claims that he is allergic to the flu and COVID-19 vaccines. (DE ## 698, 702.)

*Defendant's Prior Motions for Compassionate Release*

Defendant moved previously for compassionate release based on his physical disabilities and conditions. The administrative requests within the Bureau of Prisons

3

("BOP") related to the same were denied by BOP Medical Director, Dr. Jeffery D. Allen, who concluded that defendant:

> can feed self with set up, can bathe self but needs help getting in and out of the shower, uses adaptive equipment to dress, and can groom himself independently. Mr. Cochran does not meet the BOP debilitated RIS criteria at this time. Although Mr. Cochran requires some assistance with many of his ADL and IALD needs, it is largely comprised of set-up assistance, after which he is independent. When he is in his wheelchair, he is mobile and is not confined to his room.

(DE # 610-2.) Similarly, Ken Hyle, Assistant Director/General Counsel for the BOP, stated:

> We have carefully reviewed the documentation accompanying this request and have consulted with BOP's Medical Director.
> . . .
> [Defendant] also is considered legally blind. He is dependent upon a wheelchair for mobility, but is independent with transfers. He spends the majority of his time in his wheelchair or bed and requires moderate assistance with the majority of his activities of daily living (ADLs) and instrumental ADLs. However, he is not completely disabled, remains mobile, and is capable of performing most of his selfcare.
>
> As Mr. Cochran is not completely disabled and remains capable of performing most of his self-care, he does not meet the criteria for a RIS under section 3(b). Accordingly, his RIS request is denied.

(DE #610-3.)

The Government alleges that defendant submitted a forged BOP letter in which the warden of defendant's prison appeared to approve defendant's initial request for compassionate release. (DE # 554 at 3.) Ultimately, this court did not need to determine the truth or falsity of that contention because after balancing all of the relevant factors, including defendant's serious health conditions and his history of obstructionism, the

4

court concluded that compassionate release was not appropriate, regardless of any alleged forgery. (DE # 645.)

The court's denial of compassionate release was upheld on appeal by the Seventh Circuit, which concluded that this court "took seriously its responsibility to assess whether release would be appropriate." (DE # 695-3 at 4.) In affirming this court's decision, the Seventh Circuit further noted that this court had "acknowledged that, because of his physical condition, he was unlikely to commit violent crimes in the future. Nonetheless, given its familiarity with his conduct—including his disruptive behavior during trial, his continuing assertions that he is imprisoned for a non-existent offense, and his numerous filings through the years—it reasonably concluded that he still presents a danger to society." (DE # 695-3 at 4.) The Court of Appeals further warned defendant that continuing to pepper this court with filings "may result in monetary sanctions and a filing bar." (*Id.*)

Later, defendant again moved for compassionate release, this time asking the court to consider facts related to the COVID-19 pandemic. (DE ## 647, 675, 684.) The court again declined to exercise its discretion to grant compassionate release, noting that "[t]his decision, like the court's prior one, rests significantly on defendant's historical disregard of the rule of law, the justice system, and the importance of law-abiding behavior to the functioning of a thriving society." (DE # 693 at 13-14.)

5

*Facts Regarding COVID-19*

Defendant is presently incarcerated at FCI Cumberland, a facility with a population of approximately 1,042. Federal Bureau of Prisons, FCI Cumberland, https://www.bop/gov/locations/institutions/cum/ (last accessed Nov. 3, 2021). As of the date of this order, BOP records indicate that 0 inmates and 2 staff members presently have COVID-19. Federal Bureau of Prisons, *Coronavirus*, https://www.bop.gov/coronavirus/ (last accessed Nov. 3, 2021). The BOP further reports that 936 of the approximately 1,000 inmates at FCI Cumberland have been vaccinated against COVID-19. (*Id.*)

II. **ANALYSIS**

*Procedural Posture*

The court first clarifies the procedural posture of the present analysis, because defendant has invoked a few inappropriate rules and procedures. First, defendant has petitioned for a writ of *coram nobis*. (DE # 699.) He claims that he seeks to correct serious structural errors in his proceedings. He further states that he does not want reversal of his conviction or damages, but rather "merely seeks his freedom and to move on with his life." (DE # 699 at 3.) The writ of *coram nobis* is an unusual and "ancient remedy" that has survived in the common law to the extent it has not been replaced by other statutory remedies. *United States v. Darnell,* 716 F.2d 479, 481 n.4 (7th Cir. 1983). Claims that could have been raised in a direct appeal or through a prior collateral attack are outside the scope of the writ. *United States v. Keane,* 852 F.2d 199, 202 (7th Cir. 1988). The

6

grounds upon which defendant basis his petition (specifically, that his conviction was illegal) are outside of the scope of the writ because they could have been raised in a direct appeal or via collateral attack. At best, the court might interpret the request for "freedom and to move on with his life" as another request for compassionate release. To the extent that is the case, the request is addressed later in this opinion.

Defendant also argues that the court should modify the conditions of supervised release pursuant to Federal Rule of Criminal Procedure 32.1 (DE ## 696, 697.) For the most part, his arguments in this regard are "too late: he should have raised them on direct appeal or in a Rule 35(c) motion." *United States v. Raymer*, 148 F. App'x 555, 557 (7th Cir. 2005). In any event, what defendant really presents is a "disguised request for collateral relief," *id.*, a fact even more apparent from later filings (*see, e.g.*, DE # 698), in which defendant asks to combine his Rule 32.1 request with his compassionate release motions. In essence, defendant asks the court to use Rule 32.1 to convert his remaining custodial time into supervised release time, with or without conditions. (DE # 698.) Of course, this would be an unprecedented use of Rule 32.1, which was intended to modify conditions of supervised release, not to convert prison time into a term of supervised release. The court will not allow defendant to utilize Rule 32.1 to effectuate his attempt to get out of prison before his term of incarceration has expired, so to that extent defendant's motion for Rule 32.1 relief is denied. However, to the extent defendant actually seeks a review or modification of the conditions of his supervised release, the court reserves ruling on that issue and will address it under separate cover.

7

In sum, once the procedural charades are stripped away from several of defendant's filings, the court is left with, at best, additional pleas for compassionate release. The remainder of defendant's filings more explicitly seek compassionate release. Therefore, it is through the compassionate release lens that the court now examines all of these filings.

*Compassionate Release Analysis*

Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant a convicted defendant compassionate release if the defendant meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). The court may grant a defendant's motion for compassionate release if: (1) the defendant has complied with the statute's administrative exhaustion requirement; (2) "extraordinary and compelling" reasons warrant such a reduction; (3) the court has considered the factors set forth in 18 U.S.C. § 3553(a), as applicable; and (4) the reduction is consistent with any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

**1.   Exhaustion**

Section 3582(c)(1)(A) requires a defendant to exhaust all remedies with the BOP before moving for compassionate release. Specifically, a defendant may file a request for compassionate release with a district court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

8

the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

In this case, it is unclear whether defendant has presented to his warden all of his grievances and these new grounds purportedly justifying compassionate release, but the court affords defendant the full benefit of the doubt and assumes for purposes of the present motions that defendant has properly exhausted all administrative rights and remedies.

### 2. Extraordinary and Compelling Reasons

The court is only authorized to grant defendant's request if there exist "extraordinary and compelling reasons" justifying early release. 18 U.S.C. § 3582(c)(1)(A). Congress did not define "extraordinary and compelling reasons" in § 3582(c)(1)(A), instead delegating this task to the Sentencing Commission. 28 U.S.C. § 994(t). The Sentencing Commission defines this phrase in the commentary to Section 1B1.13 of the United States Sentencing Guidelines. Presently, Section 1B1.13 is binding only on the Director of the BOP, and not a district court considering a motion for compassionate release. *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020). However, the Seventh Circuit in *Gunn* noted that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" for a district court to employ. *Id.* at 1180. Indeed, the *Gunn* court noted that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Therefore, this

9

court utilizes Section 1B1.13 and its application notes as useful, even if not binding, guidance in determining whether defendant has identified an extraordinary and compelling reason for compassionate release. *Id.*

Application Note 1 to Section 1B1.13 defines an "extraordinary and compelling" situation as one involving a prisoner who has "a serious . . . medical condition that substantially diminishes the ability . . . to provide self-care within the environment of the correctional facility." *Id.* As the court did with respect to defendant's prior compassionate release motions, the court affords defendant the benefit of the doubt and assumes that he meets the advisory standard set forth in Section 1B1.13 for purposes of determining that a defendant has a serious medical condition substantially diminishing the ability of the defendant to provide self-care.[1]

In coming to this conclusion, the court has considered defendant's contention that he has been moved to a different correctional facility and that this move has had a negative impact on defendant's ability to participate in certain residential drug treatment programs. (DE ## 698, 711.)

---

[1] Notably, some district courts have come to the opposite conclusion regarding individuals with various debilitating conditions. *See, e.g., United States v. Bunnell,* No. CR14-00119-001-PHX-DGC, 2019 WL 6114599 (D. Ariz. Nov. 18, 2019) (defendant "suffers from arthritis, sciatica, bulging lumbar discs 2-5, scoliosis, and degenerative disease causing central stenosis in his spine," and is confined to a wheelchair, but none are terminal illnesses or substantially diminish ability to provide self-care within the environment of a correctional facility); *United States v. Clark,* 3:13-cr-163-FDW-1, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (defendant suffering from declining health, diabetes, kidney failure, and back problems requiring a walker did not demonstrate that condition substantially diminished ability to provide self-care within the corrections environment or that she was not expected to recover).

10

The court further acknowledges that some of defendant's conditions or a combination thereof could place him at higher risk for complications if infected by COVID-19.[2] The court also recognizes defendant's new contention that he is allergic to vaccines such as those now available to help protect against the most serious consequences of contracting COVID-19. (DE ## 698, 702.) Defendant does not submit appropriate medical verification of any allergy, but the court accepts the contention as true for purposes of this opinion. Such a fact deserves serious consideration, and the court has carefully considered it. As indicated above, the court assumes for purposes of this opinion that extraordinary and compelling reasons exist justifying compassionate release. That is not the end of the analysis, however, as explained in more detail below.[3]

### 3. Section 3553(a) Factors

Even if a defendant presents extraordinary and compelling reasons justifying compassionate release, the court must still consider the relevant factors of Section 3553(a). 18 U.S.C. § 3582(c)(1)(A)(I). Section 3553(a) states:

(a) Factors to be considered in imposing a sentence.—The court shall consider–

---

[2] The court notes that FCI Cumberland currently has 0 confirmed inmate cases of COVID-19. Federal Bureau of Prisons, *Coronavirus,* https://www.bop.gov/coronavirus/ (last accessed Nov. 3, 2021).

[3] Defendant also contends that the illegality of his conviction and sentence (specifically, that his conduct of conviction was not criminal in nature) is, itself, an extraordinary and compelling reason warranting compassionate release. (DE # 701 at 8; DE # 713.) The court need not address this argument, as it has already assumed that defendant has established extraordinary and compelling reasons for compassionate release. However, were the court to consider the argument, it would be rejected as merely another collateral attack on defendant's conviction and sentence.

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence[s] and the sentencing range established for--

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]

(5) any pertinent policy statement guidelines [issued by the Sentencing Commission ...;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, a consideration of relevant Section 3553(a) factors weighs in favor of not granting defendant's petition for compassionate release. As the court thoroughly explained in the last two orders examining the question of compassionate release,

defendant was convicted of possession with intent to distribute crack cocaine. This drug is a physical and societal toxin with a long history of tormenting this region; defendant perpetuated that torment with his criminal behavior. Further, defendant previously engaged in decades of crimes involving deceit and disregard for law enforcement.

But, most importantly, defendant's history in proceedings before this court weigh strongly against a reduction. As explained in detail both above and in prior orders, defendant has consistently demonstrated a hostile and obstructionist attitude towards judicial proceedings and the rule of law. Defendant's behavior required the court to take the extremely unusual step of moving defendant out of his own courtroom because his disruptions were continuous and irreverent.[4] The obstructionist, persistent, disdainful behavior has continued ever since. Defendant filed, and continues to file, lengthy, baseless, motions and petitions, depriving other citizens of valuable judicial resources and time.

Further, despite numerous decisions from this court and the Court of Appeals to the contrary, defendant continues to maintain that he was wrongfully convicted of illegal charges. (*E.g.*, DE # 701 at 8; DE # 713.) He also demonstrates no remorse or acceptance of responsibility. These aspects of defendant's personal characteristics and history weigh against any further reduction of defendant's sentence.

---

[4] This, of course, was a major consideration at sentencing, when the court sentenced defendant to 405 months incarceration, at the high end of the applicable guidelines range.

Requiring defendant to serve the remainder of his sentence would also promote respect for the law and provide just punishment for defendant's offense. Abolishment or reduction of defendant's sentence would not further either goal. Additionally, society would receive some benefit from defendant serving the remainder of his sentence, as he will not be able to reengage in drug crimes while incarcerated. Requiring defendant to complete his sentence also has deterrent value, both for defendant as well as others. For these reasons, the court finds that the relevant Section 3553(a) factors weigh in favor of requiring defendant to serve the remaining 1 year and 9 months of his sentence.

### 4. Consistency with Policy Statements

As explained above, Congress (and, by delegation, the Sentencing Commission) created § 1B1.13, a policy statement related to compassionate release requests, which the Seventh Circuit has instructed district courts to consider as useful guidance. *Gunn*, 980 F.3d at 1180. That policy statement provides that compassionate release is only appropriate if the defendant is not a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13.

Defendant has repeatedly argued that, given all of the medical conditions outlined above, he would present no danger if released from prison. However, the court is not convinced that defendant poses no danger to the safety of any other person or to the community. The court's reasoning from its prior orders still applies. To reiterate, defendant has a long criminal history. Around age 20, defendant began engaging in crimes such as illegally using a credit card, check fraud, and residential burglary. (DE #

14

450-1 at 7-10.) He continued with further burglary charges, retail theft, failure to return to detention from work release, perjury, and a charge of refusal to identify himself. (*Id.* at 10-13.) Defendant has used false names, social security numbers, and dates of birth, even while under oath on some occasions. (*Id.* at 13.) Defendant was a member of the Black Gangster Disciples and there is no indication that he has ever held a legitimate job. (DE # 450-1 at 4, 17.)

At the age of 43, defendant was indicted in this criminal case for possession with intent to distribute crack cocaine. Defendant was disruptive during proceedings before both the Magistrate Judge and the undersigned, and was removed from both courtrooms. He repeatedly denied his identity and received a sentencing adjustment for obstruction. In both state and federal criminal proceedings, defendant has demonstrated disrespect and hostility towards the law by repeatedly engaging in behavior seemingly directed at impeding and evading the justice system.

Defendant is 58 years old, largely wheelchair-bound, and blind. However, as previously explained in prior orders, the court has many years of experience with defendant. The court interacted with defendant during trial, and has reviewed and ruled upon dozens of defendant's filings over the past 15 years. As the court stated in prior orders, it is not convinced that defendant's physical impairments have affected defendant to such an extent that he could not be drawn to and/or continue to orchestrate criminal activities upon release.

15

As the court previously held, while defendant may not be a likely candidate for a direct form of violent crime such as battery upon release, the court does not conclude that defendant's reentry into society would necessarily be benign. As his numerous filings show, defendant is clearly mentally capable of forming detailed strategies. He is also clearly mentally capable of reengaging in the drug distribution world, and such activity would certainly result in physical harm to members of society. *United States v. Brock*, 433 F.3d 931, 935 (7th Cir. 2006) (explaining how drug dealing history rendered defendant a danger to the community in context of Section 3553(a) analysis). The court has repeatedly stated that it had little confidence that defendant would be law-abiding upon release; that lack of confidence remains today. Therefore, as the court stated in its prior orders, to describe defendant as presenting a "minimal" danger to society would be a mischaracterization of what this court knows to be true about defendant's criminal history, as well as his past conduct and filings and the disdain for the rule of law that they represent. Defendant's continued incarceration ensures the community's safety for the remainder of his term of imprisonment.

## III. CONCLUSION

When the court weighs all of the considerations (including but not limited to defendant's medical issues, including a presumed vaccine allergy, the dangers of COVID-19, the low infection level and high vaccination rate at defendant's facility, the relevant Section 3553(a) factors, and the danger defendant may present to society upon release), the court concludes that compassionate release is not appropriate. As

16

explained in this and prior orders, defendant's release would not be without risk. Additionally, though defendant has physical challenges, defendant is adequately capable of navigating prison life for another 1 year and 9 months until his sentence expires. Further, though defendant has medical issues that could make him more vulnerable to a COVID-19 infection, especially if he is indeed allergic to the available vaccines, the court is also cognizant of the fact that defendant is presently housed at a facility with a very low infection rate and a very high vaccination rate, which reduces his risk of infection.

The court does not come to this decision easily, and it takes no pleasure in ordering the continued incarceration of a man with physical disabilities, including blindness and use of a wheelchair, during a pandemic. Like the court's prior decisions, the court's conclusion in this instance is based significantly on defendant's ongoing, unrelenting hostility to the rule of law and the justice system. *United States v. Kincaid*, No. 06-30073, 2020 WL 1874113, at *4 (C.D. Ill. Apr. 15, 2020) (declining to order compassionate release due to severity of crime and defendant's lack of remorse, noting that "the choices we make during our lifetimes will sometimes make it difficult in the end"); *see also United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming district court's decision to deny compassionate release despite medical eligibility, and judging it appropriate for district court to consider that defendant "clearly disregard[ed] all respect for the law" in coming to its decision). As it did in prior orders,

17

the court encourages defendant to prepare to rejoin society as a lawful, contributing citizen at the expiration of his term of imprisonment.

For the foregoing reasons, the court **DENIES** defendant's motions appearing at DE ## 696, 698, 699, 701, 702, 705, 710, 711, and 713. The court further **DENIES in part and TAKES UNDER ADVISEMENT in part** defendant's motion appearing at DE # 697; specifically, the court denies the motion as to any request for compassionate release, and takes under advisement any request for review/modification of conditions of supervised release.

                                **SO ORDERED.**

Date: November 3, 2021

                                s/James T. Moody
                                JUDGE JAMES T. MOODY
                                UNITED STATES DISTRICT COURT